Starr *v.* Starr and others.

---

:321] *NATHAN STARR *v.* EPHRAIM STARR,. TRUMAN STARR, AND GILES GRISWOLD.

*Fraudulent Conveyance.*

In a suit by a purchaser under execution, an original judgment can not be controverted.

A conveyance made voluntarily by a debtor to his creditor is without consideration, if the parties afterward treat the debt as still subsisting between them.

·There may be a tacit as well as an express trust.

THIS was a suit in chancery reserved for decision here, in Cuyahoga county. It was in the nature of a *quia timet* bill, and its object was to disembarrass certain lands of a title set up to them by the defendants, Truman Starr and Giles Griswold.

The complainant derived title under certain proceedings in :attachment prosecuted by him against Ephraim and William Starr. The attachment was sued .out of the common pleas of Cuyahoga county, on the 13th day of May, 1819; the lands in question were attached, and such proceedings had that they were sold and pur-

334

chased by the complainant, and a regular deed obtained from the sheriff.

The bill charges that Ephraim Starr, the original debtor and owner of the lands, had previously made a pretended sale to the other two defendants, fraudulently and without consideration, and upon a secret trust that Ephraim Starr should have the benefit, and calls upon the defendants to answer.

Ephraim Starr, in his answer, states that in the year 1816, Nathan Starr, the complainant, and William Starr were partners in trade in New York, and agreed upon a dissolution. That William Starr assumed the payment of all the debts of the firm, and that Ephraim became his security in a bond to Nathan, to indemnify Nathan against the debts of the firm. It was upon this bond that the proceedings in attachment were had, and Ephraim denies any knowledge of the debts of the firm paid by Nathan after making the bond. He further states that in the year 1817, he resided in New York, and was indebted to Truman Starr about $11,000 for money borrowed, and to Giles Griswold about $3,000. That to secure the payment of these sums, he, on the 1st day of May, 1817, conveyed to Truman Starr the lands in question, with others, in the whole about 5,000 acres, with intent that Truman should convey an equal proportion to Giles Griswold, which deed he delivered to Truman Starr, and received from him a power of attorney to sell the same lands.

*He further states that some time afterward he found it nec- [322 essary to apply for the benefit of the insolvent laws in the State of New York. And at this time, the deed, not being recorded, was returned to him by Truman Starr, and Truman Starr, as well as Griswold, signed his petition as a creditor, praying that he might have the benefit of the insolvent laws. He further states that after his discharge under the insolvent law, feeling himself morally bound to pay the debts due Truman Starr and Giles Griswold, he made to them a new deed, antedated so as to bear date the 1st May, 1817, the purpose of which was to protect sales made under Truman, anterior to the date of the second deed. This deed, he states, he made without the knowledge of Truman Starr, and kept it in his possession until September, 1818, when it was delivered, and his notes held by Truman Starr given up and canceled. The original power of attorney from Truman to Ephraim Starr was retained under which sales had been made by Ephraim as attor-

335

ney for Truman, and moneys received and accounted for. He relies upon his discharge under the insolvent laws of New York, as discharging him from liability on his covenant to Nathan Starr, upon which the proceedings were had. He denies all fraud and all secret trusts in making the conveyance.

Truman Starr's answer is substantially the same. Griswold, in his anwer, states that he knows nothing of the facts charged, further than that Ephraim Starr· was indebted to him, and that he had received a conveyance of land from Truman Starr, in pursuance of an understanding between Ephraim and Truman at the time the conveyance was taken by Truman of the land in dispute.

At the hearing, the complainant adduced an authenticated transcript of the proceedings and discharge of Ephraim Starr, under the insolvent act of New York, from which it appeared that Truman Starr and Giles Griswold were petitioning creditors.

The defendants produced the deed from Ephraim Starr to Truman Starr, which bore date May 1, 1817, and ·had on it a certificate of its acknowledgment by Ephraim Starr, before a master in chancery, September 10, 1817. It also had on it the certificate 323] of the acknowledgment by Mrs. *Starr, dated September 17, 1818. Her name, inserted in the body of the deed, and her signature, are in different ink from the other parts of the deed, and the ink appears to correspond with that in the certificate of her acknowledgment; it was recorded before the attachment issued.

Copies of the power of attorney from Truman to Ephraim Starr, and an agreement of counsel as to sales made by Ephraim in the name of Truman, under that power, were also produced. The deed from Truman Starr to Giles Griswold was executed after the attachment issued.

Mr. WHITTLESEY, for the defendants, maintained:

1. That the answers being responsive to the bill, and denying the trust charged, and the fraud alleged, in the making of the deed, these allegations must be put out of the case, unless the answer is disproved by testimony, which is not done here. 10 Johns. 524.

The fact that Truman Starr and Giles Griswold were petitioning creditors for Ephraim Starr, subsequent to the execution of the

deed, and thereby avowed the existence of the debts which the deed was given to liquidate, is insufficient to show fraud in making the deed. If the deed was made for a good consideration, it is not rendered void by the commission of a criminal offense afterward in relation to the same transaction; nor does the commission of such offense relate back so as to raise a trust, or constitute a fraud.

2. It is not fraudulent for a debtor to prefer one creditor to another. 5 Johns. 412; 3 Johns. Ch. 446; 4 Johns. Ch. 682; 2 P. Wms. 428; 15 Johns. 571. The insolvency of the debtor does not vary the case.

3. The redelivery of the deed did not reconvey the title. 3 Cruise, 370; 6 East, 86; 8 Johns. 395; 1 Johns. Ch. 422.

The complainant has admitted the original execution of the deed; and the original consideration being stated in the answers in reply to interrogatories, it is evident that the fee passed. It vested in Truman Starr, and could only be divested by a reconveyance. If this position is not tenable, then it is insisted:

4. That the debt, though extinguished by the discharge under the act of insolvency, was revived by the new deed, *and [324 constituted a good consideration. A promise to pay a debt thus situate, is founded upon consideration and may be enforced. 7 Johns. 36; Cowper, 544; 2 Term, 763. The second deed was made and recorded before the attachment sued out, and there is no proof of any creditor then existing to be defrauded. The judgment on the attachment is *ex parte.* If it conclude Ephraim Starr, it can not conclude the other defendants.

5. The contract upon which Nathan Starr recovered, was discharged by the proceeding under the insolvent law of New York. 9 Johns. 325. The defendant was not liable upon it. It is not a subsisting debt to taint a conveyance with fraud as against a creditor.

LYMAN and BRUSH and FITZGERALD submitted arguments on the same side:

They further contended, that in respect to Giles Griswold, he could not be affected. He knew nothing of the principal matters, was party to none of them; but was a creditor, and received his deed in payment of a fair debt, and ought to be protected.

KELLY and GRIMKE, for complainants:

Whether there were two, or only one deed, or whether the first or second deed be considered as the one upon which the defendants rely, can make no difference. Both were voluntary, and made by a man in failing circumstances. All such deeds are held fraudulent, and were so held at the common law, without the aid of statutory provisions. Cow. 432. The doctrine maintained by Lord Mansfield, in the case cited, is fortified by a multitude of decisions, both in England and America. It is distinctly recognized by Chancellor Kent, in Boyd v. Dunlap, 1 Johns. Ch., and in Hildreth v. Sands, and Roberts v. Anderson, 2 Johns. Ch., and by the Supreme Court of the United States, 8 Wheat. 243.

Deeds not made for a valuable consideration, as to creditors are voluntary. But this deed was in every sense of the term voluntary. It was never required by the grantee, was made without his knowledge upon the mere voluntary motion of the grantor, and the debt, which was the consideration, still subsisted. It remained in 325] the power of the *grantor, and the estate was put under his control, and evidently managed by him, for himself.

The secrecy with which the deed was preserved, is also a badge of fraud. The secret interest, pretended to be created for Giles Griswold, is another badge of fraud. In respect to him, Truman Starr was a trustee, not for Giles Griswold, but for Ephraim Starr. Indeed, the whole case shows that Truman was, in fact, a trustee for Ephraim of the whole title. Where the deed remains under the control of the grantor, or where there is a secret trust for his benefit, the deed is fraudulent and void. 1 Ch. Cases, 244; Neal's Equity, 126.

It is true the answer in terms denies both the fraud and the trust. But this denial can avail the defendants nothing. The facts, they state themselves, admit of no interpretation other than that the whole was a fraudulent scheme.

Both Truman Starr and Giles Griswold were petitioning creditors for Ephraim Starr after the execution of the first deed. As their debts were the avowed consideration, they must have been extinguished, had the transaction been in good faith. They swore they were creditors when the petition was filed. By this they are concluded. And as their debts were not extinguished, the first deed was without consideration clearly and unquestionably, upon the facts as stated by the defendants themselves.

338

The second deed is without consideration. The debts due from Ephraim Starr to Truman Starr and Giles Griswold were discharged by the discharge of Ephraim Starr under the insolvent law of New York. They were petitioning creditors, and assented to the discharge. They must be bound by an act to which they assented, for which they petitioned.

This debt, however it might be revived by a promise to pay it between the parties, can not be revived by the mere execution of a deed, as in this case, against other creditors. The case, ex parte Burton, 1 Atk. 255, is an authority to this point.

The covenant of Ephraim and William to Nathan Starr was not affected by the discharge of Ephraim under the *insolvent [326 law of New York. At the time of that discharge, Nathan had no cause of action on that covenant. It had not been broken. Nathan Starr was not a petitioning creditor for Ephraim Starr, and could not be, for he was not then his creditor at all. The debts which Nathan Starr was compelled to pay, were not scheduled as debts due from Ephraim Starr in his schedule. He made oath to that schedule as containing all the debts he then owed. He can not be permitted to say that this debt was then due, and his oath false.

The case of Giles Griswold can not be distinguished from that of Truman Starr. It stands upon the same deed with that of Truman Starr, and, if that deed be fraudulent and void as to one, it must be as to both. 3 Johns. 371.

By the COURT:

The complainant claims title under a sale upon execution, founded on a judgment rendered at law, in action of covenant commenced by attachment. This judgment can not be here controverted. It is conclusive that Ephraim Starr owed him the debt, for which it is rendered at the time stated in the proceedings, and places him in the attitude of a creditor, entitled to contest the fairness of the title which the defendant set up to the land in dispute.

This title is a deed of conveyance from Ephraim Starr to Truman Starr, dated May 1, 1817. The deed is produced, and upon inspection, it appears to have been acknowledged by Ephraim Starr upon the 10th of September, 1817, and by his wife upon the 17th of September, 1818—the wife's name and signature being

inserted in ink different from that of the writing in the body of the deed, and corresponding with that of her acknowledgment. It is evident that although two deeds are spoken of in the answers, there never was but one executed. The same deed made and acknowledged by Ephraim Starr in 1817, was executed by Mrs. Starr in 1818. There is no reason to presume that the master in chancery, taking Ephraim Starr's acknowledgment, antedated his certificate. And this must have been done, if the deed produced was executed after Ephraim Starr's discharge, as stated in the answer.

The defendants all insist that the first deed was executed in May, 327] 1817, to secure the debts due from Ephraim *Starr to Truman Starr and Giles Griswold. The date of the deed corresponds with this statement, and the court being satisfied that there was but one deed, and that this is it, the right of the defendants, Truman Starr and Giles Griswold, depend upon the validity of this deed.

The court agree with the defendants' counsel, that the redelivery of the deed did not reconvey the title. That redelivery is of no other importance than as one of many circumstances elucidating the character of the transaction. The deed is absolute and indefeasible; the consideration for which it was given, must have arisen at the time of its execution. If given in payment of an existing debt, there must have been an agreement that the debt should be extinguished. If the debt subsisted, and was really due, after the deed was made, there was no consideration.

It is distinctly admitted by all the parties, that the debt was not extinguished, but remained due between them. Truman Starr presented himself a petitioning creditor for account of this very debt. Giles Griswold did the same with respect to his. Both made affidavit that his debt was due to him, which could not be the case, if it had been paid by the conveyance of the land in question. Ephraim Starr, in his answer, distinctly states that it was in September, 1818, that the notes, evidences of the debt, were given up and canceled upon the delivery of the pretended second deed. Truman Starr states the same thing. The avowed object of making the alleged second deed was to discharge this debt, which Ephraim felt a moral obligation to pay.

The deed, if operative at all, was operative from May, 1817. At that time, and until September, 1818, the parties to it show that it was without consideration. And being so, the grantee held the title in trust for the grantor. It was not recorded, and there

is no evidence, except the allegation in the answers, that it ever was in the power of the grantee before September, 1818; and how long it was in the power, if ever, is not alleged.

The suggestion in the answer that Truman gave up the deed to become a petitioning creditor, is in every view of it most lame and impotent. If the transaction had been in good faith, the execution of the deed extinguished the debt. The redelivery, or giving it up, could not revive the debt, *unless there was a con- [328 tract that it should do so. Such a contract would have vested an interest in Ephraim which he was bound to put in his schedule for the benefit of his creditors. Nothing of this kind was done. If the debt was paid by making the deed, Truman Starr was guilty of both fraud and perjury in presenting himself a petitioning creditor. If the debt was revived by agreement when the deed was given up, Ephraim Starr was guilty of perjury, and fraud too, in not assigning it for his creditors' benefit. But if the conveyance was voluntary, upon no secret trust distinctly expressed, the conduct of the parties is more consistent than it could be upon any other supposition.

The circumstance that Ephraim Starr, the grantor, continued to exercise control over the property, and sell and dispose of it, receiving the purchase money, and making conveyances, is an additional badge of trust and fraud. It does not essentially change the character of this part of the transaction, that Ephraim acted under a power of attorney from Truman. That power was created at the time of the conveyance, and continued unrevoked after the return of the deed to Ephraim. Like the deed itself, it was kept a secret until it became necessary to use it to enable Ephraim to enjoy the benefit of the land.

It is another strong and unfavorable circumstance that the deed, though unrecorded, was permitted to remain for so great a length of time, in the hands of the grantor; and was a second time brought out, not at the request of the grantee, but upon the motion of the grantor, and the consideration got up, that of a debt discharged by the proceedings under the insolvent law, upon the petition of the grantee.

All the principal facts of the case unite in convincing a majority of the court, that the deed was originally made voluntarily and without consideration, and that the object was to cover the land from creditors, and save it, that it might be enjoyed by the

grantor. That this trust was not formally declared or expressed between the parties, is no reason why it can not exist. The law is not to be evaded by contrivances of this nature. A trust, tacitly created, is more difficult to reach than one that is expressed; but when it is ascertained the same consequence is attached to it.

329] *Giles Griswold is in no better situation than Truman Starr. His title rests upon the same deed, which was never operative. And although he was no party to the original transactions, yet he acquired no interest in the lands until the conveyance was made to him. He could not enforce the parol trust in Truman Starr, if there were no doubt of its existence. And his deed is made since the land was attached, and since a right was commenced in the complainant. Both deeds must be decreed fraudulent and void.

Judge Burnet's dissenting opinion:

I dissent from the opinion of the court in this case, principally, because the defendants, Truman Starr and Giles Griswold, have expressly denied the fraud imputed to them, and their answers have not been contradicted by a single witness.

They were creditors to Ephraim Starr, for money lent, to a greater amount than the estimated value of the land, and whatever might have been the fraudulent views of Ephraim Starr, or the imposition practiced by him, on his creditors, these defendants are not infected by it. Fraud must be proved; it can not be presumed. The facts from which unfavorable inferences might be drawn, against these defendants, appear to be satisfactorily explained. They may all be true, and they perfectly innocent. On such grounds, I can not agree that the complainant, who is an after creditor, has a right to wrest from them their *tabula in naufragio*, and effect, for his own exclusive benefit, the same object, which he alleges is a fraud in them. Their equity, to say the least of it, is as strong as that of the complainant. It is prior in point of time, and they have the law on their side. Equity being equal, the law prevails. *Prior est in tempore, potior est in jure.*

The deed first executed, and delivered by Ephraim to Truman, was for a valuable consideration. It was made before his application for the benefit of the insolvent laws of New York, and when he was at liberty to prefer one creditor to another. The execution and delivery of this deed vested the legal title in the

grantee, and the conveyance was complete. As the land was not received in full discharge of the debt due to Truman, and to Griswold, it *was perfectly consistent with the nature of the [**330** transaction, that the notes of Ephraim should be retained until the proceeds of the land should be ascertained. When that was done, the amount was to be credited, and the residue, if any, would have continued a subsisting debt.

The redelivery of the deed to Ephraim did not divest the grantee of his title, or render the conveyance void, and the fraud that might have been practiced afterward, on the bankrupt laws of New York, could not relate back, so as to avoid a conveyance previously made, in good faith, and for a valuable consideration.

The second deed may be considered as a nullity, because there was no interest in the grantor that could be conveyed by it, and I can not discover how the validity of the first deed can be affected by the subsequent conduct of the parties, in relation to third persons, who had no interest or concern in the transaction.