THE CELLAR LUMBER CO., APPELLANT, *v.* HOLLEY ET AL., APPELLEES.

[Cite as Cellar Lumber Co. v. Holley, 9 Ohio App. 2d 288.]

(No. 8488—Decided March 7, 1967.)

*Messrs. Metz, Bailey & Norris*, for appellant.
*Mr. Robert R. Richards*, for appellee William G. O'Harra.

TROOP, J.  Plaintiff, The Cellar Lumber Company, began an action in the Common Pleas Court of Franklin County by filing a petition against five defendants, Arthur M., Anna O., Ralph E., and Patricia Ann Holley, together with William Gould O'Harra.  The allegations important to our review are that on July 1, 1962, the four Holleys owned five lots in the O'Harra Estates No. 2 Addition, and that on July 1, 1962, Ralph E. and Patricia Ann Holley deeded their interests in the lots to Arthur M. and Anna O. Holley.  Later, on July 11, 1962, Arthur M. and Anna O. Holley deeded the lots to William Gould O'Harra.

The petition recites further that the Holleys, on July 1, 1962, and July 11, 1962, were indebted to the plaintiff in the sum of $8,650.92, and were also indebted to other creditors, which debts they were unable to pay.  At the same time they were indebted to O'Harra.  And still further, it is alleged that on July 1, 1962, and July 11, 1962, defendants knew that they were insolvent, and that, knowing the state of their insolvency and in contemplation thereof, and seeking to prefer O'Harra to the exclusion of other creditors, the Holleys did convey and transfer the lots as indicated to O'Harra by deed on July 11, 1962.

The allegations of the plaintiff add up to an assertion of a fraudulent conveyance which the plaintiff seeks to have held as void.  The prayer also asks for the appointment of a receiver and other relief.

Allegations contained in plaintiff's petition are sufficient to invoke Sections 1313.56 and 1313.57, Revised Code, or, Sections 1336.01, 1336.02, 1336.03 and 1336.04, Revised Code. Nothing in the statutes seems to require that one or the other group must be followed. Chapter 1313 deals with voluntary assignments and bulk sales, whereas Chapter 1336 deals with fraudulent conveyances.

Section 1336.04, Revised Code, reads as follows:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

According to that section the conveyance from the two Holleys is fraudulent if the Holleys were insolvent at the time of transfer, or would become so after the transfer, and if the transfer was made without a fair consideration. There is no other burden of proof upon the plaintiff. Neither intent on the part of the grantor nor knowledge on the part of the grantee is required to be shown.

The trial court filed a decision in this case June 22, 1966, in which it says that the plaintiff failed to prove by a preponderance of the evidence that O'Harra knew "whether or not" Arthur Holley was insolvent. Section 1336.04, Revised Code, does not require such proof. Plaintiff was only required to show that Holley was insolvent.

Section 1336.02, Revised Code, furnishes a definition of insolvency. It reads as follows:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

Legal insolvency refers to the situation where the entire assets of an individual are insufficient to pay his debts. A broader concept, originating with merchants or traders, is equitable insolvency, or the inability to pay debts as they become due in the ordinary course of business. See the discussion in 29 Ohio Jurisprudence 2d 608, Section 2 et seq., and the case of American Hosiery Co. v. Baker (1899), 18 C. C. 604, 10 C. D. 219. Equitable insolvency is employed in Section 1336.-

06, Revised Code. The definition in Section 1336.02 goes one step further. It also includes the debtor who, although presently meeting his obligations as they become due, has incurred unmatured debts to such an extent that it is apparent he will not be able to meet them when they become absolute and matured. This is determined by considering the present "fair salable value" of his assets, and comparing that with the amount of his "probable liability on his existing debts as they become absolute and matured."

The testimony of Arthur Holley himself provides the best evidence as to his solvency. In the record he speaks concerning the number of judgments taken against him. When asked specifically whether he was unable to make payments as they came due in the daily course of transactions, he replied, "Yes, with an explanation." The court directed him to go ahead and make his explanation. He explained, "they started to put liens against me." The liens he claimed stopped construction funds from coming to him from the banks. He added, "there was a lot of them filed, I don't have the dates on them, I expect 22, 25, 30."

Liens are filed when payment is not made in the ordinary course of a business. Accumulating judgments and liens resulted in the withdrawal of loanable funds by lending institutions. In our opinion, this was sufficient to establish that Holley was insolvent under both Sections 1336.02 and 1336.06, Revised Code.

Before reviewing the matter of fair consideration as required by Section 1336.03, Revised Code, a longstanding generalization deserves attention, as follows:

"A person largely indebted cannot make a voluntary conveyance of his property without the most careful regard for the rights of his creditors. Such a conveyance is void as to existing creditors, unless property is retained, clearly and beyond doubt, sufficient to pay all the grantor's debts, for it is considered to be in fraud of such creditors. * * *" 25 Ohio Jurisprudence 2d 442, Section 27, and see supporting cases noted.

The applicable part of Section 1336.03, Revised Code, reads as follows:

"Fair consideration is given for property, or obligation:

"(A) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; * * *"

The record in the instant case makes it abundantly clear that no money or property passed from O'Harra to Holley at the time of passing the deed in question. The reconveyance of the lots is admitted in O'Harra's answer. He alleges that the notes given by the Holleys to O'Harra at the time of the sale of the lots were cancelled. The "fair" consideration required, it is suggested by defendants' answer, is the cancellation of a pre-existing debt—the notes.

There were no notations of payment on the notes. The notes, plaintiff's Exhibits 1 through 5, were the specific notes given for the lots involved, 12, 13, 14, 15, and 17. An examination shows that three notes, plaintiff's Exhibits 1 through 3, not only do not contain any notation of payment but carry a stamp on the back of each note indicating that judgment was taken on them in the Common Pleas Court. The remaining two bear the word, "cancelled," across the face.

It should be noted that the effect of the notation "cancelled" is dimmed by testimony of O'Harra. He said that Holley owed him as much as $30,000 on July 11, 1962, on notes for lots. When asked whether he had given credit for payment of any of the five notes he replied that they did not make any payments. Then came the question, "So they still owe you for those five lots?," and the answer, "That's right."

Concerning a pre-existing debt as consideration, 25 Ohio Jurisprudence 2d 440, Section 25, presents this general proposition:

"* * * While a pre-existing debt is a sufficient consideration to support a deed as between the grantor and the grantee, even in such case there must be an agreement that the debt is extinguished; the deed is without consideration if the parties afterward treat the debt as still subsisting between them. This is all the clearer where the rights of creditors are involved, and a conveyance of property to a creditor in consideration of a pre-existing debt may be considered fraudulent if the debt is not considered by the parties totally or partially extinguished. * * *"

See, also, *Harbine* v. *Harper* (1936), 21 Ohio Law Abs. 226.

The absence of any agreement to cancel the notes as between the parties to the deed is confirmed by the record. The grantor says that he had no conversation with the grantee at the time of transfer. As previously pointed out, the grantee regards the notes as still owing. Such facts do not produce an agreement to cancel.

The case of *Starr* v. *Starr* (1824), 1 Ohio 321, produces a corollary rule, as follows:

"A conveyance made voluntarily by a debtor to his creditor is without consideration, if the parties afterward treat the debt as still subsisting between them."

It is impossible to determine how Holley treated the debt after the conveyance, but it is perfectly clear how O'Harra treated it when he took judgment on three notes. Any holder who takes judgment on a past due note certainly treats it as subsisting. O'Harra took the judgments after he received the deed.

Appellant's (plaintiff's) third assignment of error, urging that the plaintiff was entitled to judgment in default against the Holleys, raises some interesting points. *Ortman* v. *Falknor* (1938), 27 Ohio Law Abs. 312, holds as follows:

"2. If there are any circumstances which relieve a grantor from the imputation of fraud, it is incumbent upon him to produce evidence to this effect."

Defendants Holley did not answer the allegations contained in plaintiff's petition. The trial court chose to disregard that situation, and quite properly proceeded to trial to determine the position of O'Harra, thereby avoiding some knotty, if not insoluble, problems. In view of the failure to answer, however, it can hardly be said that Holley did much to refute the imputation of fraud.

One other decision is noteworthy. *Oliver* v. *Moore* (1872), 23 Ohio St. 473, announced a rule as follows:

"4. In an action by a creditor for the purpose of subjecting property in the hands of a donee to the payment of his claim, it being made to appear that the debt was contracted by the donor prior to the making of the gift, the burden of showing the solvency of the debtor at the time of making the gift rests upon the defendant."

Neither Holley nor O'Harra produced any evidence re-

294

futing Holley's insolvency. It was not shown that O'Harra knew of it, although it is evident that he was not being paid and had not been paid as notes became due. Such fact moves in the direction of satisfying the requirements of Chapter 1313.

O'Harra, at the time of the sale of the lots to the Holleys, took only unsecured promissory notes in payment. Neglecting to make himself secure by a mortgage on the lots, he cast his lot with the general creditors of the Holleys. He is entitled to no special treatment because he was the former owner of the lots reconveyed to him. All general creditors had a right to rely upon the lots as assets of the Holleys when the record title was in the Holleys' name.

There was no agreement to cancel at the time of the reconveyance. Nothing in the record indicates that the two notes were marked cancelled in response to any agreement. When the marks were applied was not shown. Three notes were treated as still owing by being put in judgment. No evidence was produced to refute the insolvency of the Holleys.

Plaintiff proved the insolvency of Holley. It was not necessary to prove O'Harra knew he was. There was a lack of "fair" consideration for the transfer.

The judgment of the trial court is, therefore, reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

DUFFEY, P. J., concurs.

DUFFY, J., dissenting. I would affirm the judgment of the trial court, as there was no evidence of the "present fair salable value of his [Holley's] assets" or his "probable liability on his [Holley's] existing debts," and Holley did testify that in July 1962 he had "no doubt at all that I was going to make it."