**In re Robert Edward POOLE, Debtor.**

**The TOLEDO TRUST COMPANY, Plaintiff,**

**v.**

**Robert E. POOLE, et al., Defendants.**

**Bankruptcy No. 81–01197.**
**Adv. No. 81–0528.**

United States Bankruptcy Court,
N. D. Ohio, W. D.

Nov. 3, 1981.

Donald F. Melhorn, Jr., Toledo, Ohio, for plaintiff.

William E. Longthorne, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER GRANTING PRELIMINARY INJUNCTION

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard on Plaintiff's motion for a preliminary injunction restraining Defendants from certain actions in connection with their respective interests in the assets and income of the Defendant B & B Realty Company except upon prior approval of this Court. Upon consideration of the evidence adduced at the hearing, the relevant standard governing the grant or denial of a preliminary injunction, and the briefs of counsel, it is the decision of this Court that Plaintiff is entitled to partial relief under its motion.

## FACTUAL BACKGROUND

This case concerns an alleged fraudulent conveyance from Defendant Robert E. Poole to Defendant Dorothy D. Poole, his wife, of his 50% interest in the B & B Realty Company, a real estate partnership the primary asset of which consists of a parcel of real estate valued at $500,000.00. The Plaintiff, The Toledo Trust Company, a judgment creditor of Defendant Robert E. Poole in the amount of $265,800.00, is seeking to set aside the conveyance on the grounds that it was made while Robert E. Poole was insolvent, or was thereby rendered insolvent. Alternatively, it is alleged that the transfer was made with actual intent to hinder, delay, or defraud his present or future creditors. These allegations are asserted as causes of action under the provisions of Sections 1336.04 and 1336.-07 of the Ohio Revised Code respectively.

This case was originally brought in the Common Pleas Court of Lucas County, Ohio. Upon the filing by Robert E. Poole of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, it was subsequently removed to this Court pursuant to the provisions of 28 U.S.C. § 1471 and § 1478.

While the circumstances underlying this dispute are complicated and the proofs adduced in support of each parties position in the motion for preliminary injunction are somewhat confusing and incomplete, this Court will endeavor, to the best of its ability, to set forth the facts, as discerned from the evidence submitted thus far, that are at the heart of this controversy. Emphasis will be given to those facts showing Robert E. Poole's solvency or insolvency at or near August 8, 1978, the time of the alleged fraudulent transfer, and to facts establishing or negating an actual intent to hinder, delay or defraud creditors, as a result of the conveyance.

## A. SOLVENCY [1]

Prior to August 8, 1978, Robert E. Poole (Poole) and Sam B. Spizman were equal partners in the B & B Realty Company (B&B) pursuant to the terms and conditions of a written partnership agreement.

On August 8, 1978 the partnership, as formerly constituted, was dissolved and a new partnership agreement entered into. Under the new "Articles of Co-Partnership" Poole had transferred the entirety of his 50% interest in B&B to his wife, Dorothy D. Poole, and Sam B. Spizman had assigned one-half of his 50% interest in B&B to his daughter, Marcia Sterns. Poole's transfer of his 50% interest in B&B to his wife is the alleged fraudulent transfer.

The primary asset of B&B was, and continues to be, a parcel of real estate with building thereon located in Lucas County, Ohio. This asset is presently the subject of a business property lease for a term of one year commencing on April of 1981 with an option to extend the term of the lease for an additional year. The rent under the lease is $6000 a month, the largest part of which is apparently being distributed as profits to the current co-partners in B&B. Also, lessee enjoys an option to purchase the real estate during the term of the lease for a price in excess of $500,000.

On or about August 8, 1978 Poole was a principal in, or involved with, several other business entities. Seaway Carpets, Inc. (Seaway) was incorporated in approximately 1963. Seaway was, up until it went out of business in 1980, a retail distributor of carpeting and carpet accessories. Poole was president of Seaway.

Seaway and Poole were co-makers on a series of demand notes given to The Toledo Trust Company to evidence borrowings on a line of credit. On or about August 8, 1978 a sum of approximately $700,000 was outstanding on the Toledo Trust Obligation. According to Poole's testimony, the Toledo Trust obligation was secured by accounts receivable of $1,435,709.00 and inventory of

approximately $350,000 to $375,000. In December of 1980, Seaway went out of business and the notes then outstanding were defaulted. Toledo Trust subsequently took possession of the remaining inventory and attempted collection on the Seaway accounts receivable. As a result of the liquidation of inventory and collection of accounts receivable, Seaway's obligation to Toledo Trust has currently been reduced to $265,800, the amount for which Toledo Trust took judgment against Poole and Seaway in June of 1981.

Since about 1975 Seaway also borrowed money from the Citizens and Southern Financial Corporation (C&S). C&S is an Atlanta based corporation in the business of commercial financing and leasing. Mr. Poole, pursuant to a written agreement executed on October of 1975, signed as the guarantor of any Seaway obligations to C&S. On August 8, 1978 the amount outstanding on the C&S obligation was somewhere between $580,000 and $640,000. C&S reportedly had a security interest in $500,-000 to $540,000 of Seaway inventory to secure this obligation. The amount of Seaway's current obligation to C&S, after a liquidation of the inventory held as security, is in excess of $228,000.

Mr. Poole also acted as guarantor on Seaway obligations to the Meinhardt Commercial Corporation and to Northwest Factors. The liability on the Meinhardt obligation in August of 1978 was reportedly $50,000 and that to Northwest Factors was from $50,000 to $100,000. There was a cross-corporate guarantee on the Meinhardt obligation from the Poole Distributing Company whose net worth was reportedly about $220,000. Seaway's net worth at this time was reportedly $487,000.

Poole was also president, in August of 1978, of the Poole Distributing Company (PDC) and Enterprise Carpets, Inc. (Enterprise). PDC, whose business began in 1958, was a wholesale distributor of hard surface floor covering and ceramic wall tile. Enterprise sold contract carpet on a direct basis

1. The following is a summary of Robert Poole's financial condition at or near August 8, 1978 which is based almost entirely on his uncorroborated testimony.

for large jobs. Its business commenced in 1969 or 1970.

Enterprise, in August of 1978, owed Ohio Citizens approximately $67,204.00. Mr. Poole and Robert Burnard were guarantors of this obligation which was also secured by reported PDC accounts receivable of $178,924.00. Current liability on this obligation is reportedly $15,000 to $16,000.

Mr. Poole also had, at this time, dealings with National Clothes Exchange, a Lansing, Michigan based discount clothing company of which Mr. Poole owned 37% of the stock. Mr. Poole executed a personal guarantee to the Bank of Lansing for $50,000 to secure National Clothes Exchange's obligation at this time of $50,000. Mr. Poole also had possible contingent liability to Bank of Lansing for $25,000 to $50,000 on loans it made to Cut Label, Inc., a discount clothing operation of which his wife had a 25% interest. Both of these loans were secured by inventory.

The only personal obligation of Mr. Poole at this time was a note to the Ohio Citizens Trust Co. for $12,000 which may have been paid off by August of 1980.

A summary of Mr. Poole's obligations, both personal and as guarantor, and a list of his assets at or near the time of the August 8, 1978 transfer are attached infra as an addendum to this memorandum.

Some evidence was introduced by Plaintiff tending to discredit the proofs introduced by Defendant in support of Seaway's, and inferentially, Mr. Poole's solvency. In particular, it was shown that, in December of 1980, Seaway "wrote off" as bad debts $650,000 in Seaway accounts receivable. In addition, Robert Michaels, a commercial loan representative for Toledo Trust, testified that, upon examination of a substantial number of the files relating to the accounts receivable written off in December 1980, he found evidence that many of them related to accounts wherein collection problems had begun in 1978, around the time of Poole's transfer of his interest in B&B to his wife.

## B. FRAUD

The evidence tending to establish or negate Mr. Poole's actual intent to hinder, delay or defraud creditors, centers on proofs introduced by Plaintiff showing inconsistent sets of financial statements produced by Seaway accountants, misrepresentations in personal financial statements given by Mr. Poole to his creditors, and the signing by Mr. Poole of increased personal guarantees for corporate loans at or near the time of the alleged fraudulent transfer. Defendants introduced evidence that the conveyance was motivated by estate tax considerations and Mr. Poole's interest in resolving asserted marital difficulties.

On July 8, 1977, and again, on October 2, 1978, two different financial statements showing Seaway in a significantly different financial condition were submitted to Seaway by its accountant, M. E. Mathews. Mr. Poole was unable to account for these differences or explain the origin and existence of the financial statements.

Further, differing values for Seaway inventory were submitted in the financial statements dated October 2, 1978, representing Seaway's final condition as of February 28, 1978, and in Seaway's 1977 United States Corporation Income Tax return, for the taxable year ending February 28, 1978. Mr. Poole testified that this difference, in one instance amounting to approximately $250,000, can be explained by different accounting principles applying to tax reporting on the one hand, and financial statements on the other.

Four personal financial statements given by Mr. Poole to The Toledo Trust Company, Citizens and Southern Financial Corporation, Meinhardt Commercial Corporation, and the Bank of Lansing were introduced. In none of these statements, given in late 1977, early 1978, and mid 1978, were any of the contingent liabilities Mr. Poole had incurred as guarantor or co-maker for various of his creditors listed. Additional inaccuracies, such as Mr. Poole showing himself rather than B&B Realty as titleholder to the partnership property subsequent to the August 8, 1978 transfer, were manifest.

Mr. Poole attributed these apparent misrepresentations to either lapse of memory or misunderstanding as to the legal significance of the terms describing varying types of contingent liabilities.

Further evidence showed an increase in Mr. Poole's personal guarantee on the corporate indebtedness of National Clothes Exchange and Cut Label Inc. both shortly before and shortly after the August 8, 1978 transfer.

The expressed motivations for Mr. Poole's transfer of his partnership interest in B&B Realty to his wife were his concerns regarding equalization between his and his wife's estates for tax purposes and his interest in reconciling a marital dispute between he and his wife.

Mr. Poole's insurance agent, a chartered life underwriter and member of an estate planning council, testified that he met with both Mr. Poole and his wife on several occasions in 1977. The desirability of transferring the partnership interest in B&B Realty from Mr. Poole to his wife was reportedly discussed, the agent's advice being that the transfer would act to equalize their respective estates, thereby reducing potential estate tax liabilities.

### DISCUSSION

█ Rule 765 of the Bankruptcy Rules provides that Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings. Since Rule 701(5) of the Bankruptcy Rules provides that any proceeding instituted by a party to obtain an injunction is an adversary proceeding, Rule 65(a) F.R.C.P., governing the issuance of a preliminary injunction, and the relevant cases thereunder setting the standard for its issuance, is controlling in the present dispute. Ohio law does not govern the issuance of a preliminary injunction despite the fact that this cause of action is based upon a state statute. *See* C. Wright & A. Miller, *Federal Practice and Procedure*, Ch. 9, § 2943 at 390–391 (1973).

█ The grant or denial of a preliminary injunction is a matter within the sound discretion of the trial court. *Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694 (6th Cir. 1972). In determining on appeal whether the court has abused its discretion in granting or withholding preliminary injunctive relief, the Sixth Circuit Court of Appeals in *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977), has set forth four standards which must be considered:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

This Court has therefore examined the four relevant standards, as discussed below, in the context of the present case in reaching its decision granting Plaintiff partial relief under its motion.

### A. THE LIKELIHOOD OF SUCCESS ON THE MERITS

This cause of action was originally brought pursuant to § 1336.04 and § 1336.07 of the Ohio Revised Code. In order to determine whether Plaintiff has shown a strong or substantial probability of success on the merits, the proofs adduced thus far must be evaluated under the respective terms of each statutory provision.

Section 1336.04 R.C. provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Defendants have admitted in their answer that the conveyance in issue was made on August 8, 1978. The only issues remaining under this provision are whether Mr. Poole was insolvent, or rendered insolvent, at the

time of the conveyance and whether the conveyance was made without a fair consideration.

Personal involvency under § 1336.02 R.C. is defined as follows:

A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Since difficult problems of proof are frequently attendant to proving a person's solvency or insolvency at some point in the past, as they are under the present circumstances where a number of contingent obligations on corporate guarantees are involved and important business records are apparently missing or lost, the question of which party bears the burden of proof on this issue may be critical in determining the probability of success on the merits. This issue is vigorously disputed in the present case.

■ Plaintiff urges *Oliver v. Moore*, 23 Ohio St. 473 (1872) and *Cellar Lumber Co. v. Holley*, 9 Ohio App.2d 288, 224 N.E.2d 360 (Franklin Co. Ct.App., 1967) for the following proposition taken from paragraph 4 of the syllabus of the *Oliver* decision:

In an action taken by a creditor for the purpose of subjecting property in the hands of a donee to the payment of his claim, it being made to appear that the debt was contracted by the donor prior to the making of the gift, the burden of showing the solvency of the debtor at the time of making the gift rests upon the defendant.

In *Oliver*, two parcels of land were purchased at the defendant/husband's instance and conveyed to the defendant/wife, while the husband continued to pay the mortgage debts on the parcels as they matured. The court found that, on the evidence presented, the conveyance from husband to wife was a gift. The plaintiff was the husband's judgment creditor, and since the weight of the testimony showed the husband's insolvency at the time of the gift, the court concluded that the wife's interest in the property should not be protected against the plaintiff's claim. 23 Ohio St. at 480–481.

In *Cellar Lumber Co.*, an action under § 1336.04 R.C., and other statutory provisions dealing with bulk sales and voluntary assignments under Chapter 1313 R.C., the Court noted with approval the rule set forth in *Oliver*. 9 Ohio App.2d at 293, 224 N.E.2d at 364.

In contrast, Defendant cites the following passage from Ohio Jurisprudence 2d in support of his contention that the burden of proof as to all issues remains with the plaintiff:

In Ohio, apparently contrary to the prevailing view, it is held that in an action to subject to a husband's debts property conveyed to his wife, the rule that the burden of proof rests upon the plaintiff, and does not at any time by reason of presumptions in his favor, or by a prima facie case made, shift upon the defendant, applies. Although a transfer of property from husband to wife will be presumed to be a gift, the burden of proof remains on the one attacking such a transfer. (footnotes omitted)

25 O.Jur.2d 584, Fraudulent Conveyance, § 153. It is the decision of this Court that this passage, and the cases cited in support thereof, *Van Hoose v. French*, 75 Ohio App. 342, 62 N.E.2d 259 (Fairfield County Ct. App., 1944), and *Van Ingen v. Peterson*, 12 O.C.C. (n.s.) 253, 31 O.C.C. 506 (Hamilton County Cir.Ct., 1909), aff'd without opinion 84 Ohio St. 473, 95 N.E. 1153 (1911), are not controlling on the issue of who has the burden of proving solvency or involvency in a case under § 1336.04 R.C. and that the rule set forth in *Oliver v. Moore*, supra and approved in *Cellar Lumber Co. v. Holley*, supra, should be followed.

Both cases advanced by Defendant are inapposite under the present circumstances. *Van Hoose v. French*, supra, was an action to marshall liens and subject real estate to sale in payment of plaintiff's prior judgment. Plaintiff had obtained a judgment by confession against defendant Homer C. French in Franklin County, Ohio. On the same day judgment was obtained, execution

was issued to Fairfield County. The sheriff of Fairfield County made levy on certain of French's real estate in that county but the captions on the foreign execution docket and index were defective. Subsequently, a second execution was issued, again defectively captioned and indexed, and before a third properly captioned and indexed alias execution was issued, French conveyed his interest in the property to his wife. After the third properly captioned and indexed alias execution was levied on property no longer in French's name, French's wife conveyed her interest to defendants Moore and Henry. The trial court dismissed plaintiff's claim.

On appeal, the only question was whether the lien was perfected as to give actual or contructive notice to purchasers. In this regard, in considering whether the wife was a bona fide purchaser, and therefore protected against the claimed lien, it was recognized that this issue hinged on whether there was any consideration for the deed from husband to wife. The above stated rule, advanced by defendant as controlling on who has the burden of proof as to solvency or insolvency of the donor in a fraudulent conveyance action, was applied by the court in that case as determinative of whether the conveyance from husband to wife was for any valid consideration. The issue, solvency or insolvency on the one hand, and adequacy of consideration in the context of determining whether someone is a bona fide purchaser, on the other, are clearly distinguishable. This Court will not apply rules controlling in the latter issue out of their proper context.

In *Van Ingen v. Peterson*, supra, plaintiff claimed that real estate was purchased by the defendant/husband and title taken in the name of his wife to hinder, delay and defraud his creditors. The determinative issue in that case was the question of who provided the consideration for the transfer of the real estate to the wife's name. If the consideration was provided by the defendant/husband, who was insolvent at the time, the conveyance was fraudulent. The rule proposed by Defendant in the instant case was applied as controlling on the issue of who provided the consideration for the transfer, not on any question regarding the debtor's insolvency. 12 O.C.C. (n.s.) at 254. *Van Ingen* then, is similarly distinguishable from *Oliver v. Moore*, supra, and *Cellar Lumber Co. v. Holley*, supra.

■ Defendant, therefore, clearly bears the ultimate burden of persuasion on the only seriously contested issue as to whether the August 8, 1978 conveyance was made while Mr. Poole was insolvent or rendered insolvent and therefore fraudulent under § 1336.04 R.C. To prove his *solvency*, therefore, under § 1336.02, supra, he must show that "the present fair salable value of his assets" was *more* than the amount that would have been required to pay "his probable liability on his existing debts as they became absolute and matured."

The precise nature of the concept of solvency or insolvency contained in the statute was more fully illuminated in *Cellar Lumber Co. v. Holley*, supra:

Legal insolvency refers to the situation where the entire assets of an individual are insufficient to pay his debts. A broader concept, originating with merchants or traders, is equitable insolvency, or the inability to pay debts as they become due in the ordinary course of business. See the discussion in 29 Ohio Jurisprudence (2d) 608, Section 2 *et seq.*, and the case of *American Hosiery Co. v. Baker* (1899), 18 C.C. 604, 10 C.D. 219. Equitable insolvency is employed in Section 1336.06, Revised Code. The definition in Section 1336.02 goes one step further. It also includes the debtor who, *although presently meeting his obligations as they become due, has incurred unmatured debts to such an extent that it is apparent he will not be able to meet them when they become absolute and matured.* This is determined by considering the present fair salable value of his assets, and comparing that with the amount of his probable liability on his existing debts as they become absolute and matured. (emphasis added)

9 Ohio App.2d at 290–291, 224 N.E.2d at 363.

The evidence produced by Mr. Poole in support of his assertion of solvency consisted entirely of his uncorroborated testimony detailing assets and liabilities at or near the time of the conveyance of his interest in the B & B Realty Co. to his wife. By far the largest portion of these assets consisted of Mr. Poole's interest in various stocks in Seaway Carpets, Inc., Poole Distributing Co., Enterprise Carpets, Inc., and National Clothes Exchange.

The method of evaluation of these assets, however, is far from clear. Although the asserted value of the Seaway Carpets, Inc. stock may have some relation to an agreement between Mr. Poole and Mr. Poole's former partner in B & B, Sam Spizman, to purchase Poole's interest in certain Seaway stocks, whether this agreement was ever carried out and the exact amount of any consideration given is unclear. The value of the Poole Distributing Co. stock is listed as the "book value" of the stock as of July 31, 1978. The value of the Enterprise Carpets stock was based on "the statement of February 28, 1978," although which statement is referred to is uncertain.

There is no clear showing that any of these values are substantially related to the "fair salable value" of the assets. The "book value" of stock of a closely held corporation is not necessarily representative of its "fair salable value." In addition, the evidence that $600,000 of Seaway accounts receivable were written off in late 1980 and that a not insignificant portion of the accounts receivable were of doubtful collectability some time prior to December 1980 causes further questions regarding the evaluations indicated. Finally, despite Mr. Poole's testimony that Seaway was a healthy going concern in mid 1978, the fact that Seaway, and all the corporations in which Mr. Poole owned stock, went out of business at the end of 1980, raises some lingering doubts that this financial strength was in fact a reality.

In contrast, Mr. Poole's possible contingent liabilities as guarantor of the various corporate obligations were staggering. The amount, somewhere in excess of $1,500,000, was, according to Mr. Poole, abundantly secured by corporate inventory and accounts receivable. The fact remains, however, that the amounts presently outstanding on the two largest obligations to The Toledo Trust Company and the Citizens and Southern Financial Company, for which there are no other guarantors, are presently in excess of $500,000.

In sum, on the weight of the evidence adduced thus far, given the allocation of the burden of proof as to Mr. Poole's solvency at the time of the transfer and shortly thereafter, it is the conclusion of this Court that there is a strong or substantial likelihood of Plaintiff's success on the merits under § 1336.04 R.C. This determination is based upon the Court's impression to this point that, at the time of the transfer, given the questionable values attributed to Mr. Poole's assets and the large amounts of outstanding contingent liabilities, he may have been unable, after the transfer, to meet his existing obligations as they became absolute and matured.

Before turning to the question of the Plaintiff's likelihood of success under § 1336.07 R.C., it is to be noted that, on the facts and law as presently discerned, this Court finds that Defendants' assertion of adequate consideration for the transfer in Mr. Poole's reported attempt at rectifying any marital difficulties between he and his wife to be unsubstantial. *Whitacre v. Redmond*, 8 Ohio Law Rep. 165, 24 Ohio Dec. 207 (Hamilton County C.P. 1910), a case advanced by Defendant in support of his contention that the transfer was supported by adequate consideration, held that an agreement on the part of a wife to refrain from bringing an action against her husband for divorce and alimony constitutes a sufficient consideration for a conveyance of property by him to her. This was not a case under Chapter 1336 R.C. nor is this decision necessarily consistent with § 1336.-03's definition of "fair consideration." In addition, Mr. Poole's brief testimony on this issue did not support a finding that a divorce action was imminent. In any case, the better reasoned approach is to find that,

*as against a third party creditor of the husband,* a wife's forbearance from a divorce action against the husband is not valid consideration for a transfer of property from husband to wife. See *First National Bank v. Enzler,* 537 P.2d 517, 523 (Alaska 1975).

Plaintiff is also seeking to set aside Mr. Poole's conveyance of his partnership interest in B & B Realty Co. to his wife under § 1336.07 R.C. which provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors.

In determining under this section whether Plaintiff has shown a strong or substantial likelihood of success on the merits, the issue arises as to the degree of proof required to prove actual intent to hinder, delay, or defraud creditors. Although there appears to be some conflict in the Ohio cases on this point, *see* 25 O.Jur.2d 587, Fraudulent Conveyance, § 157, it appears that a more recent decision of the Ohio Supreme Court may be dispositive on this issue.

■ *Household Finance Corp. v. Altenberg,* 5 Ohio St.2d 190, 214 N.E.2d 667 (1966), was an action to recover money loaned in reliance upon a materially false statement in writing respecting the financial condition of the borrower, which, under the terms of § 17(a)(2) of the Bankruptcy Act, (11 U.S.C. § 35) would not be dischargeable in Bankruptcy. Although, under these circumstances, the degree of proof required to prove fraud was a preponderance of the evidence, 5 Ohio St.2d at 193–194, 214 N.E.2d 667, the court announced the following general proposition in paragraph one of the syllabus:

> In an action for equitable relief based on fraud, such as to set aside or reform a written document, clear and convincing evidence of the fraud is required, but, in an ordinary action at law for money only based on fraud, a preponderance of the evidence is sufficient to prove such fraud.

5 Ohio St.2d 190, 214 N.E.2d 667. Thus, in Ohio there is now a clearly articulated distinction between actions based on fraud seeking equitable relief, and those seeking money damages. The former require clear and convincing evidence to sustain the burden of proof. All other civil actions, even if based on fraud, require proof only by a preponderance of the evidence. See *Johnson v. Stackhouse Oldsmobile,* 27 Ohio St.2d 140, 142, 271 N.E.2d 782, 784 (1971).

■ The present action to set aside a conveyance on the basis of actual intent to hinder, delay, or defraud creditors is, in the opinion of this Court, more akin to an action in equity, such as an action to set aside or reform a written contract, than an action at law, such as a tort action based on fraud or misrepresentation to collect money damages. This Court therefore, for the present purposes and for purposes of a decision on the merits, will require that Plaintiff prove actual intent to hinder, delay, or defraud creditors under § 1336.07 R.C. by clear and convincing evidence. This decision is apparently consistent with that in other jurisdictions under the Uniform Fraudulent Conveyance Act, upon which the Ohio statute is based, and other similar statutory provisions. *See* 37 Am.Jur.2d 883, Fraudulent Conveyance, § 228.

Despite the above allocation of the burden of proof it is the decision of this Court that, upon the evidence adduced thus far and the relevant legal standards as presently understood by the Court, Plaintiff has met his burden, on this motion for a preliminary injunction, of proving a strong or substantial likelihood of success on the merits.

■ In determining whether a conveyance is made with actual intent to hinder, delay, or defraud a creditor, direct evidence of fraudulent intent is not essential and, indeed, in most circumstances, not likely to be available. Consequently, certain traditionally designated "badges" or indicia of fraud, circumstances which usually or frequently attend a conveyance designed to hinder, delay, or defraud creditors, in con-

cert with other suspicious circumstances, have generally been held to be sufficient to show fraud and invalidate the transfer of property. *See generally* 24 O.Jur.3d, Creditors Rights and Remedies, Sections 754–759, 784; 37 Am.Jur.2d, Fraudulent Conveyance, Sections 10–14, 25, 26. Under the present circumstances, given the relationship of the parties involved, and other circumstances attending the August 8, 1978 transfer from Mr. Poole to his wife, sufficient evidence in support of the assertion of fraud has been produced for purposes of granting a preliminary injunction.

■ Transfers between husband and wife or between family members are suspect and subject to the strictest scrutiny, particularly when the consideration supporting the transfer is inadequate. *See, e. g., In re Carter*, 4 B.R. 692, 694 (Bkrtcy.D. Colo.1980); *Gurley v. Blue Rents, Inc.*, 383 So.2d 531, 535 (Ala.1980); *Ralston Purina Co. v. Davis*, 511 S.W.2d 482, 484 (Ark.1974). It has previously been determined, supra, that Mr. Poole's transfer to his wife to alleviate certain marital difficulties was inadequate consideration for the transfer. Despite Mr. Poole's testimony that he also effected the transfer to even up his and his wife's respective estates for tax purposes, and the testimony of his insurance agent relating to discussions to that effect, this Court is unpersuaded that impending taxes rather than pursuing creditors were the motivating factor behind the transfer.

There are other suspicious circumstances. As previously indicated, there are grounds for believing that, at the time of the transfer, the financial picture of Seaway Carpets, Inc., a corporation whose financial condition was intimately related to that of Mr. Poole, was something less than worry free. At this same time grossly inaccurate representations relating to ownership of the B&B Realty property and Mr. Poole's contingent liabilities were made on financial statements given to creditors. These financial statements were apparently relied upon by the financial institutions involved in extending to Seaway, and the other corporations Mr. Poole controlled or was involved

with, critical operating capital. If these substantial credit advances were not given, a scenario of rapid business collapse and the consequent transformation of Poole guarantees from remote liabilities to judgment liens on Poole property is easily envisioned. There existed a strong motivation, then, for the transfer by Poole of his one substantial asset not burdened with security interests to his wife, who presumably would support him if the circumstances warranted it. While stopping short of reaching any ultimate decision as to the merits of this controversy, justification for the conclusion that Plaintiff has shown a strong or substantial likelihood of success on the merits seem readily available on the issue of actual intent to hinder, delay or defraud creditors under § 1336.07 R.C., and therefore, as with § 1336.04 R.C., the first of the four required findings for a preliminary injunction is met.

## IRREPARABLE INJURY, SUBSTANTIAL HARM TO OTHERS, AND THE PUBLIC INTEREST

Given the above determination that Plaintiff has shown a strong or substantial likelihood of prevailing on the merits, the other requisites for the issuance of a preliminary injunction, under the circumstances of this case, are more easily demonstrated.

■ The requirement that Plaintiff show irreparable injury is at the heart of the issuance of a preliminary injunction. The general function of a preliminary injunction being to maintain the status quo pending a determination of an action on its merits, *Blaylock v. Checker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976), a showing of actual or threatened injury must be demonstrated. As one commentator noted:

> There must be a likelihood that irreparable harm will occur. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant. Thus, a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the in-

jury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis. (footnotes omitted)

C. Wright & A. Miller, *Federal Practice and Procedure*, Ch. 9 § 2948, at 436–438 (1973).

 In the present case, a present existing actual threat of irreparable harm exists in the possibility that the B&B Realty Co. property, which is the primary asset of the partnership, might be encumbered or sold, and the proceeds of sale dissipated prior to a determination of this case on the merits. As noted previously, the property in question is currently the subject of an option to purchase. The injunction, therefore, is necessary to preserve the Court's power to decide the case at trial and render effective relief.

 The third factor, whether the issuance of an injunction would cause substantial harm to others, can be most easily considered in light of the scope of the injunction the Court is issuing. In exercising its discretion on application for injunctive relief, the Court has wide latitude to mold its decree to meet the exigencies of the particular case, and need not grant the total relief sought by the applicant. *See, Tully v. Mott Supermarkets, Inc.*, 337 F.Supp. 834, 851 (D.N.J.1972). In reaching its decision as to the scope of the injunction issued, this Court is guided by a balancing of the injury that would occur to the parties in this case. *See Garlock, Inc. v. United Seal Inc.*, 404 F.2d 256, 257 (6th Cir. 1968); *American Federation of Musicians v. Stein*, 213 F.2d 679, 683 (6th Cir.), *cert. denied* 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954). Since the object of a preliminary injunction is to maintain the status quo pending adjudication of the merits, the injunction will attempt to preserve the corpus of the property involved, or the proceeds of its sale, while allowing current earnings to be distributed.

Plaintiff, in his motion for preliminary injunction, prayed the Court restrain defendants Robert E. Poole, Dorothy D. Poole, and B&B Realty Co. as follows:

1. From selling, from entering into any option or contract to sell, from mortgaging, and from causing or suffering any other lien to be placed against, the real property at 5040 Enterprise Blvd., Toledo, Ohio, which is the subject of this action, except upon prior approval of this Court.

2. From making any distribution of assets, income or earnings of defendant B&B Realty Company to defendants Robert E. Poole, Dorothy D. Poole, or either of them, or to any other person claiming to be a partner of said defendant B&B Realty Company, except on prior approval of this Court.

3. From paying, out of the assets or funds of defendant B&B Realty Company, any attorney fees except upon prior approval of this Court.

Paragraph one of Plaintiff's prayer for relief, if adopted as the order of this Court, would unnecessarily harm Defendants and the other principals in B&B Realty Co. not parties to this suit. To maintain the status quo in this lawsuit pending a decision on the merits it is unnecessary and perhaps unlawful to interfere, in certain respects with the existing legal obligations of Defendants. More specifically, this Court will not attempt to prohibit B&B Realty Co. from selling the real property at 5040 Enterprise Blvd., Toledo, Ohio, which is the subject of a purchase option pursuant to a duly negotiated lease agreement between B&B Realty Co. as lessor and the lessee, Exothermics, Inc., not a party to this suit. There is no indication that this was anything but an arms length transaction or that the price agreed upon pursuant to the purchase option is not substantially related to its current fair market value. Consequently, it will be sufficient to protect the Plaintiff's interest if the proceeds of any sale to Exothermics, Inc., pursuant to the present purchase option, be held in escrow pending the outcome of this litigation. Any other sale, other than to Exothermics, Inc., pursuant to the purchase option contained in the present lease, will require prior approval of this Court. The other provisions

of paragraph one, against mortgaging, or causing or suffering any other lien to be placed against the property, except upon prior approval of this Court, will be maintained.

Except for the prohibition against distribution of *assets*, the provisions of paragraph two of Plaintiff's prayer for relief are also unnecessarily burdensome to Defendants and other parties, such as Mr. Spizman and his daughter, not directly involved in this lawsuit. The earnings from the lease agreement between B&B Realty Co. and Exothermics, Inc. are, with respect to the present interests of Mr. Poole and his wife, perhaps their sole means of support and source for the legal fees to maintain the defense of the present lawsuit. The Court has not rendered a decision on the merits and to deprive them of living expenses and funds to defend this lawsuit would, instead of maintaining the status quo, tip the balance in favor of Plaintiff. Any distribution of assets, however, will be subject to prior approval of this Court.

The provisions of paragraph three, to the extent that it prohibits payment from *assets* rather than earnings, should be maintained. All distributions from assets will be subject to prior approval of this Court.

The final factor to be considered is whether the public interest would be served by issuing a preliminary injunction. It is the decision of this Court that the public interest expressed in §§ 1336.04 and 1336.07 R.C., statutory provisions designed to prevent debtors from placing their property beyond the reach of their creditors to the prejudice of their creditors' legal and equitable rights, will most adequately be served by the Court acting to preserve the status quo in this lawsuit until decision on the merits is rendered.

### CONCLUSION

It is the conclusion of this Court that all the requisites for the issuance of a preliminary injunction have been shown under the circumstances of this case. Therefore, for the foregoing reasons, it is hereby,

ORDERED that the Defendants herein named, their officers, agents, servants, employees, and attorneys be and they hereby are stayed, enjoined, and restrained as follows until the Court renders its decision on the merits:

1. Except as described in paragraph two below, from selling, entering into any option or contract to sell, from mortgaging, and from causing or suffering any other lien to be placed against the property at 5040 Enterprise Blvd., Toledo, Ohio, which is the subject of this action, except upon prior approval of this Court.

2. Defendants may sell the above described property to the Exothermics Corporation pursuant to the purchase option agreement in the business property lease executed March 8, 1981, but the proceeds of the sale to which Dorothy D. Poole would be entitled to as owner of a 50% interest in the B&B Realty Company shall be held in escrow pending a decision on the merits of this lawsuit.

3. From making any distribution of assets of Defendant B&B Realty Company to Defendants Robert E. Poole, Dorothy D. Poole, or either of them, or to any other person claiming to be a partner of said Defendant B&B Realty Company, except upon prior approval of this Court. Current earnings shall be allowed to be distributed.

4. From paying out of the assets of Defendant B&B Realty Company, any attorney's fees except upon prior approval of this Court. Attorneys' fees may be paid out of current income. It is further,

ORDERED that, it appearing that the potential incidental and consequential costs and damages Defendants will incur if this injunction was issued wrongfully would be minimal, this Court deems $100.00 as the proper amount of security to be posted by Plaintiff pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. It is further,

ORDERED that a trial on the merits of this cause is hereby set for Wednesday, December 9, 1981, at 10:00 o'clock A.M., Courtroom No. 1, Room 103, United States Court House, 1716 Spielbusch Avenue, Toledo, Ohio.

ADDENDUM

## ASSETS

| | | | |
|---|---|---|---|
| Cash | $ 12,000.00 | Enterprise Carpets, Inc. (Book) | 51,774.99 |
| | | National Clothes Exchange (Book) | 26,000.00 |
| Marketable Securities | 3,500.00 | IRA Account | 3,805.00 |
| Seaway Carpets, Inc. (Book) | 233,969.85 | Cash Value Life Insurance | 3,128.00 |
| Poole Distributing Co. (Book) | 102,407.57 | Automobile, tangible personal property (no value stated) | –0– |
| | | | $436,585.41 |

ADDENDUM

| NATURE OF POOLE'S LIABILITY | AMOUNT | CREDITOR | DEBTOR | AMOUNT OF REPORTED SECURITY | ADDITIONAL GUARANTORS | PRESENT OBLIGATION | YEAR OUT OF BUSINESS |
|---|---|---|---|---|---|---|---|
| Co-maker | $700,000 | Toledo Trust | Seaway Carpets, Inc. | $1,435,709.00 (Accounts Receivable) $350,000–$375,000 (Inventory) | NONE | $265,800 | 1980 |
| Guarantor | $580,000 to $640,000 | Citizens & Southern Financial Company | Seaway Carpets, Inc. | $500,000 to $540,000 | NONE | $228,000 | 1980 |
| Guarantor | $50,000 | Meinhardt Commercial Corporation | Seaway Carpets, Inc. | NONE | Poole Distributing Company (Net Worth–$220,000) | Unknown | 1980 |
| Guarantor | $50,000 to $100,000 | Northwest Factors | Seaway Carpets, Inc. | NONE | NONE | $47,000 | 1980 |
| Guarantor | $62,204 | Ohio Citizens Trust Co. | Enterprise Carpets, Inc. | Enterprise and Poole Distributing Accounts (over $178,924) | Robert Burnard | $15,000 to $16,000 | Unknown |
| Guarantor | $50,000 | Bank of Lansing | National Clothes Exchange | Certain Inventory (Loan not to exceed 30% to 40%) | YES | Unknown | 1980 |
| Guarantor | $25,000 to $50,000 | Bank of Lansing | Cut Label Inc. | $368,459 | Unknown | Unknown | 1980 |
| Personal | $0 to $12,000 | Ohio Citizens Trust Co. | Robert E. Poole | NONE | Dorothy D. Poole | 0 | —. |
| | $1,517,204 to $1,664,204 | | | | | | |