PARKER, APPELLEE, *v.* CLARY ET AL., APPELLANTS.

(No. 977—Decided January 8, 1958.)

*Mr. Howard A. Traul,* for appellant.
*Messrs. Goslee & Dunlap,* for appellee.

GUERNSEY, J. This is an appeal on questions of law and fact from an action under the provisions of Section 1313.56 *et seq.,* Revised Code, to set aside a chattel mortgage executed by the defendant Clary to the defendants Dinova Brothers as mortgagee. The judgment of the Common Pleas Court was for the plaintiff and the cause has been tried *de novo* to this court on the transcript of the evidence in the lower court.

Plaintiff claims that on November 8, 1955, he recovered a judgment (*pro confesso*) against defendant Clary in the sum of $1,092, with interest thereon at 6% per annum from November 8, 1955, and costs of suit; that an execution issued thereon was returned January 9, 1956, wholly unsatisfied; that on the morning of March 16, 1956, in the course of proceedings in aid of execution filed by plaintiff, defendant Clary disclosed that he was the "owner" of a certain 1953 Ford tractor chassis and

cab; that upon learning this, plaintiff caused alias execution to be issued on his cognovit judgment pursuant to which the sheriff levied upon and seized the vehicle on March 17, 1956; and that on March 16, 1956, following the hearing of plaintiff's proceedings in aid of execution, defendant Clary conveyed the vehicle by means of chattel mortgage to the defendants Dinova Brothers.

Plaintiff claims further that this conveyance was made by defendant Clary "with intent to hinder, delay and defraud his creditors and this plaintiff" and received and accepted by defendants Dinova Brothers "with full knowledge of said fraud."

Summonses on plaintiff's petition were served on each of the defendants. Dinova Brothers filed an answer and cross-petition, the answer admitting the execution of the chattel mortgage and generally denying the other material allegations of plaintiff's petition, and the cross-petition claiming an artisan's lien for work done and parts furnished on and for said vehicle, claiming a lien by virtue of the chattel mortgage, seeking the marshaling of liens and judgment in the amount of the artisan's and mortgage lien. No claim was made, nor does the evidence show, that said mortgage was in default in any respect and no summons on said cross-petition was served either upon the plaintiff or upon the defendant Clary. Plaintiff filed a reply and answer in the form of a general denial to the answer and cross-petition. In their brief, filed in this court, Dinova Brothers admit that the evidence does not support their claim of an artisan's lien and that the cause of action for same should be dismissed. Defendant Clary did not file an answer, either to plaintiff's petition or to defendant Dinova Brothers' cross-petition, nor does the record indicate that he otherwise entered his appearance in the cause.

Plaintiff's cognovit judgment, the issuance of execution and alias execution thereon, the fact of proceedings in aid of execution, and the levy of alias execution at about five o'clock on the afternoon of March 17th, are all undisputed in the evidence.

The only other evidence of any probative value reflecting upon the intent of Clary at the time of the execution and delivery of the chattel mortgage and the knowledge by Dinova

Brothers of such intent was the testimony of Clary and of Frank Dinova. Clary testified that he and Frank Dinova had been on friendly terms for five or six years; that although he "bought" the vehicle in question on November 10, 1954, from a Mrs. Dearth the title was not assigned to him until February 11, 1956, as prior to that time he still owed the seller money and was leasing the vehicle on a mileage basis; that Frank Dinova knew about the hearing in aid of execution; that after the hearing Clary and Dinova went immediately to an attorney's office to have the note and chattel mortgage prepared; that the vehicle "was *substantially* all of the property" that he "owned *free and clear of any debt*" (emphasis added); that he did not own any real estate; that Mr. Dinova accompanied him to the clerk's office where a title certificate was issued to Clary; and that in February 1956, Clary had also purchased a 1956 tractor from Dinova Brothers, giving a mortgage back in the amount of $7,000, of which amount Clary still owed at least $6,500. Frank Dinova testified that he had been friendly with Clary for five to six years; that he had done work for him at various times on various vehicles which Clary had owned; that Clary had a running account with Dinova Brothers for gas, labor and materials which amounted to $2,329, and odd pennies, on March 16, 1956; that he had asked Clary for security on the account several times prior to that date; that Clary came to him after lunch on March 16, 1956, and told him that he would give him a note and mortgage; that Clary said nothing to him at the time that "certain proceedings had been had in this court under which there was an effort being made to collect money from him"; that he knew only what he read in the papers as to creditors other than himself pursuing Clary; that he knew Parker "had a judgment —what I read in the paper"; that Dinova did not see that Clary got title to the vehicle; that Clary got title himself; that Clary's bill "was sizeable enough amount I needed security, but I did not take that note to beat anybody else out"; that he had ledger sheets and invoices (which were produced and admitted in evidence) to show the nature and amount of the account; that Clary also owns a 1950 International truck, subject to mortgage to someone else; that he had to have some way of having security for Clary's account "and still let him work and pay for re-

pairs''; that, although he had seen about the plaintiff's judgment in the paper, he did not know whether or not it had been paid; and that, in taking the mortgage, he "just wanted to protect myself."

There was no evidence offered as to the existence or amount of debts owed by Clary to creditors, if any, other than Parker and the Dinova Brothers, or as to the existence or nonexistence of other property of Clary, encumbered or unencumbered. Indeed, there was no evidence from which it could be determined, or concluded, that Clary was, in fact, insolvent.

The pertinent portions of the statutes upon which plaintiff's action is based are as follows:

Section 1313.56, Revised Code:

"* * * a * * * mortgage * * * made * * * [by a debtor] in any manner, with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor. In a suit brought by a creditor of such debtor for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all the assets of such debtor, including the property so sold, conveyed, transferred, mortgaged, or assigned, and also administer all the assets of the debtor for the equal benefit of the creditors of the debtor in proportion to the amount of their respective demands, including those which are unmatured."

Section 1313.57, Revised Code:

"Section 1313.56 of the Revised Code does not apply unless the person to whom such * * * mortgage * * * is made, knew of such fraudulent intent on the part of such debtor."

It is readily apparent, from these portions of the statutes, that for plaintiff to prevail in this action brought under such sections he must prove by a preponderance of the evidence both that the debtor in making the mortgage intended to hinder, delay or defraud creditors, and that the mortgagee knew of the debtor's fraudulent intent. *Lytle* v. *Baldinger,* 84 Ohio St., 1, 95 N. E., 389, Ann. Cas. 1912B, 894; *Carruthers* v. *Kennedy,* 121 Ohio St., 8, 166 N. E., 801; and *City Trust & Savings Bank* v. *Weaver,* 68 Ohio App., 323, 40 N. E. (2d), 953.

In applying the provisions of Section 1313.57, Revised Code (formerly Section 11105, General Code), the Supreme Court of

Ohio, at page 16 of its opinion in the case of *Carruthers* v. *Kennedy, supra,* said:

"It is a more reasonable interpretation of the language of Section 11105, General Code, to say that 'fraudulent intent' applies to a preference as well as to a transaction involving actual fraud. Inasmuch as a preference was valid at common law, and later forbidden by statute, the prohibition could only have been made on the ground that it involved a certain degree of fraud. It is therefore the true meaning of Section 11105 that no transaction would be vitiated unless the purchaser knew of the design on the part of the vendor to prefer the vendee to the exclusion of the other creditors, or, *if it was a transaction involving actual fraud,* that he knew of the intent of the vendor to hinder, delay, and defraud his creditors." (Emphasis added.)

It is entirely conceivable for circumstances to exist wherein a debtor could and would make a mortgage with intent to hinder or delay some one or more of his creditors without thereby intending to defraud him or them in any manner. Indeed, a debtor, without any fraudulent intent might, in the management of his personal affairs, act in a manner whereby he intended to hinder or delay one or more of his creditors so that all his creditors, including those hindered or delayed, would be benefited. As was stated by the Supreme Court of Ohio, at page 590 of its opinion in the case of *Damarin & Co.* v. *Huron Iron Co.,* 47 Ohio St., 581, 26 N. E., 37:

"Still the right of a company, though embarrassed, to continue its business and retrieve its fortunes, if possible, must be conceded to it as well as to natural persons, and this right necessarily carries with it the power to obtain an extension of credit by giving a mortgage upon its property to such of its creditors as are unwilling to give further time unless so secured. When this power is fairly and honestly exercised, with no purpose at the time of immediately abandoning business or making an assignment, the validity of a security so obtained cannot well be questioned."

We are of the opinion that a mortgage made by a debtor with intent to hinder or delay one or more of his creditors, may not be set aside under the provisions of Section 1313.56 *et seq.* of the Revised Code unless such intent to hinder or delay is

coupled with an intent to defraud, as demonstrated either by the extent of the hindrance or delay intended or by the circumstances surrounding the making of the mortgage.

In the case before us it would appear that defendant Clary executed the mortgage to secure a pre-existing debt, the creditor wanting security for the debt and to "still let him work and pay for repairs." There is no showing that by reason of said mortgage any creditor, including the plaintiff, was thereby wholly, or even partially, prevented from making good their claim or claims from other assets belonging to Clary. Notwithstanding the fact that the 1953 Ford chassis and cab constituted "substantially" all of Clary's property "free and clear of any debt," the record reveals that both at the time of the mortgage and of the trial of this cause he also had at least equities in a 1950 truck and a 1956 truck of some amount not shown, and there is no showing that he did not have other property, encumbered or unencumbered. There is no showing that the defendant Clary was not working or unable to pay his debts out of his earnings. There is no showing as to the amount or character of any other debts of Clary, or, in fact, that he was actually insolvent, contemplated insolvency, or even might become insolvent. On this state of the record, although from the circumstances of the transfer it is apparent that Clary made the mortgage with intent to hinder or delay the plaintiff, the plaintiff has failed to prove that such intent to hinder or delay was coupled with an intent to defraud.

It is true that by failing to answer plaintiff's petition the implication thereby arises that Clary admits the allegations of plaintiff's petition that he made the mortgage with intent to "hinder, delay and defraud" his creditors, but such admission is binding only as between Clary and the plaintiff and does not in any manner bind the defendants Dinova Brothers. 41 American Jurisprudence, 436, Pleading, Section 203; 71 Corpus Juris Secundum, 157, Pleading, Section 62.

Plaintiff having failed to prove the requisite intent of the debtor in making the mortgage, there could be no knowledge by the mortgagee of a fraudulent intent which did not in fact exist. Even had defendant Clary's intent been fraudulent, the evi-

dence does not justify a finding that the mortgagee knew of such fraudulent intent.

For the reasons mentioned, the plaintiff's petition is dismissed and final judgment thereon is hereby rendered for all the defendants.

It being admitted that the evidence does not sustain a cause of action for an artisan's lien and there being no claim or proof that the mortgage in question was in default, and there further being no summons on the cross-petition served upon defendant Clary, or entry of appearance by him thereon, the cross-petition is dismissed and final judgment thereon is hereby rendered for the plaintiff and for the defendant Clary. The said cross-petition not having been tried on its merits as to the issue of marshaling of liens, the dismissal of defendant's cross-petition shall be without prejudice to the marshaling of liens in an appropriate action.

*Judgment accordingly.*

MIDDLETON, P. J., and YOUNGER, J., concur.