**In re Sanford E. HARPER, Debtor.**

**Larry E. STAATS, Trustee, Plaintiff,**

**v.**

**Carol A. HARPER, et al., Defendants.**

**Bankruptcy No. 2–88–02811.**

**Adv. No. 2–90–0064.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Oct. 4, 1991.

Larry E. Staats, Columbus, Ohio, trustee.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, Ohio, for defendants.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Introduction*

The Chapter 7 trustee, Larry E. Staats, commenced this adversary proceeding against the debtor and his wife (together, the "defendants") on March 14, 1990. By his complaint, the trustee seeks to set aside a transfer by the debtor to his wife of the debtor's interest in their residence. The trustee also requests declaratory relief prohibiting the debtor from exempting such interest from the bankruptcy estate. This matter was tried to the Court and taken under advisement on February 4, 1991.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine under 28 U.S.C. § 157(b)(2)(B), (F) and (H). The following opinion and order shall constitute the Court's findings of fact and conclusions of law.

### II. *Findings of Fact*

#### A. The Transfer

On February 10, 1988, Sanford E. Harper, the debtor, executed a quitclaim deed by which he transferred to his wife, Carol Harper, an undivided one-half interest ("Interest") in their residence (the "Property"). The debtor retained his dower interest in the Property, and now claims such interest exempt from inclusion in the estate under Ohio Revised Code ("O.R.C.") § 2329.-66(A)(1) (Anderson 1991). At the time of the transfer (the "Transfer"), Carol Harper, owner of the other undivided one-half interest in the Property, gave no monetary consideration to the debtor.

On or about February 9, 1990, the debtor signed and filed with the County Auditor, Franklin County, Ohio, a Statement of Reason For Exemption From Real Property Conveyance Fee (the "Statement"), representing therein that the Transfer was a gift between husband and wife and, thus, exempt from taxation under applicable law.

#### B. The Loan

In February, 1988, Carol Harper applied for a home-equity loan from I.T.T. Financial Services ("ITT"). At the time of such application, the debtor, the former chief executive officer of a failed manufacturing company, was sporadically employed as a consultant and had been turned down previously by another financial institution for a home-equity loan. Due to this, the debtor did not apply with his wife for the ITT loan. The defendants state that the ITT loan was requested to pay college tuition and related expenses of their two children, as well as various household bills.

On February 23, 1988, ITT lent the sum of $62,000 ("Gross Proceeds") to Carol Harper, obtaining a second mortgage on the Property as security for the loan. As a

condition to its making the loan, ITT required Carol Harper to satisfy certain existing debts to other creditors. Accordingly, upon issuance of the loan, and after deducting closing costs and recording fees, the following amounts were distributed directly from the Gross Proceeds to existing creditors:

| | |
|---|---|
| Bank One | $ 2,669.44 |
| BancOhio National Bank—Visa Card | 1,270.35 |
| BancOhio National Bank—Mastercard | 2,182.96 |
| Madison's | 691.75 |
| Dollar Savings | 28,776.94 |
| Grady L. Pettigrew | 6,000.00 |
| TOTAL | $43,591.44 |

The defendants state that the foregoing itemized debts were "family obligations."

The sum of $17,176.01 (the "Net Proceeds") remained for disbursement directly to Carol Harper. ITT issued the Net Proceeds to Carol Harper, who thereupon deposited such sum in a joint checking account she held with the debtor at Trans-Ohio Savings Bank. The account, however, listed only Carol Harper's social security number. On March 10 and April 19, 1988, Carol Harper issued two checks on this account, in the amounts of $6,100 and $2,800, respectively, to the debtor. These two checks allegedly represented the debtor's one-half (50%) share of the Net Proceeds. These checks subsequently were redeposited by the debtor into the checking account. A portion of the proceeds was used later by the debtor to purchase an automobile.

## C. Stipulations

The parties have stipulated that in 1987 and 1988 General Motors Acceptance Corporation, Huntington National Bank, Equal Opportunity Finance, Inc., and C.I.T. Sales Financing, Inc. commenced lawsuits against the defendants. It is stipulated further that as of June 30, 1986, a Lois Soloman held a judgment lien in the amount of $6,000 against the debtor. Soloman agreed to release her lien and claims in exchange for $3,000, paid on May 17, 1988, out of the $6,000 which had been paid to Grady Pettigrew, the debtor's counsel,

from the Gross Proceeds. The remaining $3,000 was retained by Pettigrew as payment for legal fees incurred prior to and after the filing of the bankruptcy petition.

The parties have entered into the following written stipulations:

1. It is hereby stipulated by the Parties to this action that the value of the real estate, which is the subject of this action, i.e., 1442 Wilmore Drive, Columbus, Ohio, as of February 9, 1988, the date of transfer of Sanford E. Harper's interest to Carol A. Harper, was $97,000.00; and

2. It is further stipulated that as of February 9, 1988, the date of the above transfer of Sanford E. Harper's interest in the subject real estate to Carol A. Harper, that Sanford E. Harper was financially insolvent.

## III. *Conclusions of Law*

### A. Involuntary Dismissal

■ At the close of the trustee's case-in-chief, the defendants requested dismissal of this adversary proceeding pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b), made applicable to this proceeding by Fed.R.Bankr.P. 7041(b), provides in pertinent part as follows:

**(b) Involuntary Dismissal: Effect Thereof.**

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the grounds that upon the facts and the law the plaintiff has shown no right to relief.

Upon such a motion, the court need not review the evidence in a light most favorable to the plaintiff. Rather, the court has a duty to take an unbiased view of all the evidence and determine for itself where the preponderance lies. *See Emerson Elec. Co. v. Farmer,* 427 F.2d 1082, 1084 (5th Cir.1970); *Ellis v. Carter,* 328 F.2d 573, 575 (9th Cir.1964); 9 *Collier on Bankruptcy,* Para. 7041.05, at 7041–9 (L. King, 15th ed. 1989). Absent a directive otherwise, a

dismissal under Rule 41(b) is with prejudice and on the merits.

Based upon the reasons set forth herein, the debtor's motion for involuntary dismissal shall be granted in part and denied in part.

### 1. *11 U.S.C. § 547(b) Avoidable Preference*

The trustee alleges in his third cause of action that the Transfer of the Interest constitutes a preference under § 547(b) and, thus, may be avoided. The trustee, however, abandoned this cause of action at trial. The defendants thereupon requested judgment on this claim. The defendants' request, being unopposed, was, and hereby is, granted by the Court.

### 2. *11 U.S.C. § 548 Fraudulent Transfer*

The trustee's fourth cause of action alleges that the debtor received less than "a reasonable, equivalent value in exchange for said transfers and was insolvent on the date of such transfers." The Court presumes that the trustee's claim is a fraudulent transfer claim premised on § 548(a)(2), although this is not clear.

A § 548(a)(2) claim requires the trustee to prove that the debtor received less than a reasonably equivalent value in exchange for a transfer and that the debtor either was insolvent on the date of the transfer or became insolvent as a result of the transfer. 11 U.S.C. § 548(a)(2)(A) & (B). As the defendants have conceded that the debtor was insolvent on the date of the Transfer, the only issue is whether the debtor received less than a reasonably equivalent value in exchange for the Transfer. Transcript at 10.

To sustain his burden in attempting to prove that the debtor received less than a reasonably equivalent value in exchange for the Transfer, the trustee must do two things. First, the trustee must establish that the debtor, and not a third party, received the value of the transfer. *See Klein v. Tabatchnick,* 418 F.Supp. 1368, 1371 (S.D.N.Y.1976), *aff'd in part,* 610 F.2d 1043 (2d Cir.1979); *Vadnais Lumber Sup-*

*ply, Inc. v. Byrne (In re Vadnais Lumber Supply),* 100 B.R. 127, 136 (Bankr.D.Mass. 1989); *Ohio Corrugating Co. v. Security Pacific Business Credit, Inc. (Matter of Ohio Corrugating Co.),* 70 B.R. 920, 926–27 (Bankr.N.D.Ohio 1987). Second, the value received must pass a measurement test; all aspects of the transaction must be measured in order to determine the value of all the benefits and burdens to the debtor. *Vadnais Lumber,* 100 B.R. at 136 (citing *Rubin v. Mfr. Hanover Trust Co.,* 661 F.2d 979 (2d Cir.1981)).

In support of their oral motion for an involuntary dismissal, the defendants assert that the trustee has failed to meet this burden of proof. Specifically, the defendants assert that the trustee has failed to demonstrate an absence of fair consideration. The defendants maintain that the trustee presented no evidence establishing the value of the Interest that actually was transferred by the debtor to his wife. According to the defendants, the record, at the conclusion of the trustee's case, contained only a stipulation as to the fair market value of the Property, which is not dispositive of the value of the Interest. The defendants characterize the property that was transferred, the Interest, as a one-half interest in real property, exclusive of a dower interest.

In response, the trustee contends that the evidence shows that the Transfer of the Interest constituted a gift. The trustee relies on the Statement, in which the debtor indicated, by checking a box, that the exemption is "to evidence a gift, in trust or otherwise and whether revocable or irrevocable, between husband and wife, or parent and child or the spouse of either." Based upon the Statement, the trustee contends that the Transfer must be classified as gratuitous.

The trustee asserts that the debtor's dower interest has no value and is merely an inheritance right. However, the trustee has produced no evidence or legal authority in support of this proposition. More importantly, the trustee did not present any evidence to establish the actual value of the Interest transferred by the debtor. The

trustee had the burden of establishing the value of the Interest in order to prove that the debtor did not receive a reasonably equivalent value in exchange for the transfer. Absent such evidence, the Court is unable to conclude that the debtor received less than a reasonably equivalent value for the Transfer. Accordingly, the defendants' motion for an involuntary dismissal shall be, and hereby is, GRANTED on the trustee's fourth cause of action.

### 3. *11 U.S.C. § 544*

The complaint also requests relief under § 544 of the Bankruptcy Code. Section 544 grants the trustee extensive powers which, among other things, permit him to seek the avoidance of preferential or fraudulent transfers. This provision grants the trustee the power to challenge the validity of transactions. *See generally,* 4 *Collier on Bankruptcy,* Para. 544.0–1, at 544–2 (L. King, 15th ed. 1989). Section 544 is commonly referred to as the "strong-arm" clause.

### (a) Ohio Revised Code § 1336.04

■ While the trustee has failed to so specify, his claim apparently is predicated upon § 544(b) of the Bankruptcy Code. Section 544(b) confers upon the trustee, with certain restrictions, the power to avoid any transfers or obligations that are voidable for fraud under applicable state or federal law. Relying on § 544(b) the trustee claims that the Transfer is fraudulent under O.R.C. § 1336.04, which provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

Once a transfer is established by the trustee, the trustee must then demonstrate that: (1) the individual is or will be rendered insolvent as a result of the conveyance; and (2) the conveyance is made without a fair consideration. Neither the debtor's intent nor his knowledge is relevant if the trustee is able to prove these elements. *Sease v. John Smith Grain Co., Inc.,* 17 Ohio App.3d 223, 225, 479 N.E.2d 284, 288 (1984) (citing *Cellar Lumber Co. v. Holley,* 9 Ohio App.2d 288, 290, 224 N.E.2d 360, 362 (1967)).

### (i) *Trustee's Burden of Proof*

■ In an action to set aside a conveyance as fraudulent, the burden of proof rests upon the trustee to prove that the exchange lacked fair consideration. Although the trustee has the ultimate burden of proof, the establishment of "indicia or badges of fraud" may give rise to an inference or presumption which shifts the burden of proof. Once the trustee establishes several "badges of fraud," it is then incumbent upon the transferee to come forward with proof and explain the *bona fides* of the transaction. *Staats v. Palermini (In re Palermini),* 113 B.R. 380, 383 (Bankr. S.D.Ohio 1990); *Toledo Trust Co. v. Poole (In re Poole),* 15 B.R. 422, 429 (Bankr. N.D.Ohio 1981); *Oliver v. Moore,* 23 Ohio St. 473, 475 (1872); *McKinley Fed. Savings & Loan v. Pizzuro Enterprises, Inc.,* 65 Ohio App.3d 791, —— N.E.2d —— (Cuyahoga Cty.1989); *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio,* 37 Ohio App.3d 162, 165, 524 N.E.2d 915, 918 (1987).

These badges, codified at O.R.C. § 1336.04(B)(1)–(11), include the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was rea-

sonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

*See also,* Uniform Commercial Transfer Act § 4(b); *United States v. Berman,* 884 F.2d 916, 922 (6th Cir.1989); *In re Zurface,* 95 B.R. 527, 537 (Bankr.S.D.Ohio 1989); *In re Warner,* 87 B.R. 199, 202 (Bankr. M.D.Fla.1988); *Matter of Trinity Baptist Church of Bradenton, Fla., Inc.,* 25 B.R. 529, 532 (Bankr.M.D.Fla.1982); *Hadar Leasing Int'l Co., Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re D.H. Overmyer Telecasting Co., Inc.),* 23 B.R. 823, 883 (Bankr.N.D.Ohio 1982). When considered alone, a badge of fraud may not be conclusive; however, a combination of badges with other suspicious circumstances has been held to be sufficient to demonstrate fraud and invalidate a transfer of property. *See Gilbert v. Maston (Matter of Maston),* 44 B.R. 880, 883 (Bankr.S.D.Ohio 1984); *In re Poole,* 15 B.R. at 431–32.

In the instant matter, the trustee has established the existence of several badges of fraud in connection with the Transfer. The first such badge may be found in the parties' stipulation that the debtor was insolvent at the time of the Transfer. Secondly, the debtor never relinquished possession of the Property; to the contrary, he continued to live in the Property following the Transfer. Thus, while ownership of the Property had been transferred to Carol Harper, the debtor remained in constant possession.

Further, the evidence reveals that at the time of the Transfer several lawsuits were pending against the debtor. The uncontroverted evidence also discloses that the debtor transferred his Interest, with the exception of his dower interest, to his wife for no concurrent exchange of money or other valuable consideration. Clearly, this raises questions as to whether the debtor received fair consideration for the Transfer.

Yet another telling badge of fraud is that the Transfer was made between husband and wife. Transfers between spouses or between family members are suspect and subject to the strictest scrutiny, particularly when the consideration exchanged appears to be inadequate. *See Zoltanski v. Akst (In re Zyndorf),* 80 B.R. 876, 879 (Bankr.N.D.Ohio 1987); *Hall v. Kuhlman (In re Steele),* 79 B.R. 503, 504 (Bankr. M.D.Fla.1987); *Cates–Harman v. Reininger–Bone (In the Matter of Reininger–Bone),* 79 B.R. 53, 55 (Bankr.M.D.Fla.1987); *Tapper v. Herbst (In re Herbst),* 76 B.R. 882, 885 (Bankr.D.Mass.1987); *Gilbert v. Maston (In the Matter of Maston),* 44 B.R. 880, 882 (Bankr.S.D.Ohio 1984); *Nat'l Bank of Pittsburgh v. Butler (In re Butler),* 38 B.R. 884, 888 (Bankr.D.Kan.1984); *In re Carter,* 4 B.R. 692, 694 (Bankr. D.Colo.1980); *Snyder Elec. Co. v. Fleming,* 305 N.W.2d 863, 867–68 (Minn.1981); *Gurley v. Blue Rents, Inc.,* 383 So.2d 531, 535 (Ala.1980); *Ralston Purina Co. v. Davis,* 256 Ark. 972, 511 S.W.2d 482, 484 (1974). Where a transfer involves family, the transferee bears the burden of proof that the transfer was made with fair consideration. *Musso v. Herman (In re Tesmetges),* 85 B.R. 683 (Bankr.E.D.N.Y.1988).

It is evident that the Transfer was attended by many of the classic badges of fraud. Thus, there exists an inference and presumption that the Transfer was fraudulent, which thereby shifts the burden of proof to the defendants to come forward with evidence of fair consideration. *See Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio,* 37 Ohio App.3d at 164, 524 N.E.2d at 917. *See also In re Poole,* 15 B.R. at 431–432. The Court, therefore, finds that the defendants' motion for an involuntary dismissal of the complaint cannot be granted at the close of the trustee's case-in-chief as to the trustee's claim under § 544.

### (ii) *Debtor's Burden of Proof*

As the burden of proof has shifted to the defendants, the Court next must determine whether the defendants have demonstrated that fair consideration was exchanged between the parties. O.R.C. § 1336.03 defines "fair consideration" as follows:

Fair Consideration is given for property . . .

(A) When in exchange for such property, . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

(B) When such property . . . is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property . . . obtained.

According to the defendants, the debtor transferred his Interest to his wife to help her qualify for an equity-based loan. The Gross Proceeds were to be used to satisfy the existing mortgage on the Property and various other financial obligations of the defendants. Carol Harper also wrote two checks to the debtor, totaling $8,900, out of the Net Proceeds. These monies were then deposited into the defendants' jointly held checking account.

The defendants argue that the debtor's receipt of the $8,900—approximately one-half of the Net Proceeds—combined with Carol Harper's promise to pay so-called family obligations, is fair consideration. The debtor denies that the Transfer was made for the purposes of hindering, delaying or defrauding his creditors. He also insists that the pending lawsuits did not prompt the Transfer. In fact, the debtor adamantly maintains that he transferred the Interest so that Carol Harper could obtain a loan based upon the Property's equity for the maintenance and support of the family. Finally, the debtor notes that his checking account at TransOhio had been maintained in its present form (*i.e.*, with only Carol Harper's social security number on the account) for several years upon the advice of the defendants' banker. The debtor explained that Carol Harper's social security number had been the only social security number on the account since 1980. No intent to prevent creditors from reaching the monies in the account, argue the defendants, can be assumed from its form.

The uncontroverted evidence reveals that the majority of the Gross Proceeds received by Carol Harper were used to bring current the defendants' family obligations, including those obligations for which the debtor was liable. Admittedly, the assumption of debts can constitute consideration for the transfer of property. *See In re Carter*, 4 B.R. at 693. Nevertheless, there is not sufficient evidence to indicate that the debtor's obligations, paid by Carol Harper, constituted fair consideration in exchange for the transferred Interest in the Property.

The Court employs the following mathematical calculation to arrive at the value of the debtor's one-half interest in the Property:

Fair market value of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $97,000
    per stipulation
Approximate amount of remaining . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − 29,000
    mortgage due and owing to
    Dollar Savings

$68,000
÷      2

Defendants' one-half . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $34,000
    interest in Property
Satisfaction of Soloman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − 6,000
    certificate of judgment
    and attorney's fees
Debtor's one-half . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $28,000
    interest in Property

Under this calculation, the value of the debtor's undivided one-half interest approximates $28,000. Absent the transfer, $28,000 is the amount of monies that would be available to creditors of the bankruptcy estate.

The defendants deny that the debtor's interest can be valued at $28,000, because the debtor did not transfer his *entire* one-half interest in the Property; his dower interest was not included in the Transfer. The debtor testified that his dower interest in the Property should be valued at $5,000, but that it is worth "at least $10–$15,000" to him. Transcript at 68. This is because, among other things, the debtor is retaining the right to reside in the Property for a year should his wife predecease him.

This is the only evidence as to the value of the debtor's dower interest. The Court finds that the debtor's opinion on this matter possesses little, if any, probative weight. The record is silent, for example, as to the basis for the debtor's opinion. Upon what facts did the debtor determine that the value of his dower interest is $5,000, or that it is worth $10–15,000? The defendants offered no evidence, other than the bare unsupported assertion of the debtor, of the value of the dower interest. The trustee offered no evidence whatsoever on this subject.

In a further attempt to demonstrate the legitimacy of the Transfer, the debtor testified that the two checks he received from Carol Harper, totalling some $8,900, constituted fair consideration for the Transfer. The Court rejects this argument on two grounds. First, the two checks were written against the TransOhio account by Carol Harper and then redeposited by the debtor into this same account—an account which the defendants admit they owned jointly. Under these circumstances, Carol Harper, in effect, merely transferred the money back to herself. There is no indication that the monies were placed into a separate account in which the debtor maintained exclusive control.

Secondly, the Court finds that the Transfer lacked fair consideration. While the defendants did offer evidence as to family obligations which were paid out of the Gross Proceeds, the record is devoid of any evidence which would suggest that the amounts used to pay outstanding financial obligations were reasonably equivalent to the sum of $28,000. The Court simply cannot find that $8,900 from the Net Proceeds constitutes fair consideration for the debtor's Interest, which approximates a value of $28,000, even excluding the value of the dower interest. Viewing the Transfer as a whole, the Court must conclude that fair consideration was not exacted.

■ After the trustee demonstrated the existence of several badges of fraud, it was up to the defendants to meet their burden of establishing the *bona fides* of the transaction by a preponderance of the evidence. They have not done so. Accordingly, the Transfer is fraudulent and avoidable by the trustee under § 544 and O.R.C. § 1336.04.

(b) Ohio Revised Code Section 1313.56

■ The trustee's second cause of action asserts a claim under O.R.C. § 1313.56, which provides as follows:

A sale, conveyance, transfer, mortgage, or assignment, made in trust or otherwise by a debtor, and every judgment suffered by him against himself in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage, or assignment made, or judgment procured by him to be rendered, in any manner, with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor.

Section 1313.57 states in pertinent part:

Section 1313.56 of the Revised Code does not apply unless the person to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor.

In order to establish the existence of a fraudulent conveyance under O.R.C.

§ 1313.56, a creditor must prove both that the debtor made the transfer with the intent to hinder, delay or defraud *and* that the transferee knew of the debtor's fraudulent intent. *Hall v. Cannaley,* 1990 WL 65383, 1990 Ohio App. LEXIS 1873 (Lucas Cty.1990); *Toledo Trust Co. v. Foxhall Partners,* 1990 WL 7974, 1990 Ohio App. LEXIS 336 (Lucas Cty.1990); *Sease,* 17 Ohio App.3d at 225, 479 N.E.2d at 288; *Parker v. Clary,* 106 Ohio App. 295, 154 N.E.2d 641, 644 (1958).

The Court may summarily dispose of this claim. Due to a lack of any evidence that the transferee, Carol Harper, knew that the debtor was acting fraudulently in transferring his Interest, the Court must deny the relief requested pursuant to O.R.C. § 1313.56. *Hall v. Cannaley,* 1990 WL 65383, 1990 Ohio App. LEXIS 1873 (Lucas Cty.1990). According to Carol Harper's testimony, the debtor transferred his Interest basically because "[the defendants] needed equity out of the home." Transcript at 19. The record is devoid of any evidence that the debtor transferred his Interest with the intent to hinder, delay or defraud creditors. Accordingly, the defendants' motion for involuntary dismissal as to the second cause of action under Rule 7041(b) shall be GRANTED.

### B. 11 U.S.C. § 522: Exemptions

■ Section 522 of the Bankruptcy Code provides a federal exemption scheme for debtors. Section 522(*l*) states: "Unless a party in interest objects, the property claimed as exempt ... is exempt." Objections to claimed exemptions must be filed within thirty (30) days after the meeting of creditors. Fed.R.Bankr.P. 4003(b). The trustee has not filed an objection to the debtor's claim of exemption. Rather, in his complaint to avoid the Transfer, the trustee prayed for declaratory relief prohibiting the debtor from exempting his Interest.

Two recent third circuit cases have adopted a literal approach to interpreting § 522(*l*). *Chrysler Motor Corp. v. Schneiderman,* 940 F.2d 911, 21 B.C.D. 1607 (3d Cir.1991); *Taylor v. Freeland & Kronz,* 938 F.2d 420 (3d Cir.1991). Both

decisions determined that if no timely objection to a claimed exemption is filed, the merits of the exemption will not be examined. *Chrysler Motor,* 940 F.2d 911, 21 B.C.D. 1607; *Taylor,* 938 F.2d at 424.

The sixth circuit appears to take a different approach. In *Munoz v. Dembs (Matter of Dembs),* 757 F.2d 777 (6th Cir.1985), while the court recognized that under § 522(*l*) an objection to a claimed exemption is waived if not made within thirty (30) days after the creditors' meeting, it was also stated that the court did not endorse "exemption by declaration." *Id.* at 780. A good faith statutory basis for the exemption is required: "[W]here the validity of an exemption is uncertain under existing law, or where ... it is the special character of the creditor that prevents the exemption, the creditor cannot rest on his rights in the face of Rule 4003(b)." *Id.*

The Court does not see that the sixth circuit's approach affects the case at hand. The sixth circuit acknowledges the clear import of § 522(*l*) and, while it explicitly rejects "exemption by declaration," the court would only disregard § 522(*l*) when there is not a good faith statutory basis for a claimed exemption. *Id.* The trustee's case does not allege lack of a good faith basis for the debtor's claimed exemption in the Property. Since the trustee failed to object to the claimed exemption in a timely manner—in fact, the trustee has not filed an objection to the exemption at all—the property claimed as exempt by the debtor is exempt. The trustee's prayer for declaratory relief under § 522 is DENIED.

### IV. *Conclusion*

Based upon the foregoing, the Court hereby grants judgment in favor of the defendants on counts II, III, IV, and V and in favor of the trustee on Count I of the complaint.

IT IS SO ORDERED.