DECISION AND JUDGMENT ENTRY
{¶ 1} Natalie K. Robbins, et al., ("the Defendants") appeal the Pike County Court of Common Pleas' judgment findings that they made certain fraudulent transfers and that the corporate veil of Natalie K. Robbins, Inc. may be pierced in order for Atlantic Veneer Corporation ("AVC") to collect on its judgment against them. In each of their six assignments of error, the Defendants allege that no competent, credible evidence supports a certain aspect of the trial court's judgment. Additionally, the Defendants assert that the trial court erred in piercing the corporate veil because AVC did not request such relief. Because we find that the record contains some competent, credible evidence to support each of the trial court's findings, and AVC's complaint served to put the Defendants on notice of the allegations against them, we disagree. Accordingly, we overrule the Defendants' assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} Terry A. Robbins ("Mr. Robbins") embezzled a large sum of money from AVC while AVC employed him in North Carolina. In 1994, AVC sued Mr. Robbins in North Carolina and obtained a civil judgment against him in the amount of $500,000. During the course of those proceedings, Mr. Robbins transferred the embezzled funds to his wife, Natalie K. Robbins ("Mrs. Robbins.") Consequently, in 1995 AVC sued Mrs. Robbins in North Carolina. In June of 1998, AVC obtained a judgment against Mrs. Robbins in the amount of $250,000. Mr. and Mrs. Robbins have not paid any portion of either judgment due to AVC.
 {¶ 3} Mr. and Mrs. Robbins moved to Pike County, Ohio, where they purchased some real estate and began to construct a home at 1311 Prosperity Road, Waverly, Ohio. On May 23, 1998, two weeks prior to the entry of the North Carolina judgment against Mrs. Robbins, the home was nearly complete and valued at between $265,000 and $292,500. Mr. and Mrs. Robbins obtained a mortgage on their home in the amount of $240,000. They then created a trust known as the Natalie K. Robbins Irrevocable Trust ("the Trust") for the benefit of their children, and transferred the home to the Trust. On the same day, Mrs. Robbins, as the sole shareholder of the 200 shares in Natalie K. Robbins, Inc.,[1]
transferred one-half of her shares to the Trust and one-half of her shares to Mr. Robbins.
 {¶ 4} Although Mr. and Mrs. Robbins transferred the Prosperity Road home to the Trust, the Trust did not assume their new mortgage obligation. Mr. and Mrs. Robbins used the money from the mortgage primarily for their businesses. One of their businesses, Natalie K. Robbins, Inc., received approximately $90,000 in contributions from shareholders. The only shareholders, past or present, are Mr. Robbins, Mrs. Robbins, and the Trust. Another corporation, N.K.R., Inc. made a down payment necessary to acquire a $6,000,000 sawmill. The Defendants claim that they are unaware of where the funds for the down payment came from.
 {¶ 5} Mr. and Mrs. Robbins continued to make improvements to the Prosperity Road home after the transfer, spending approximately $45,000 on renovations to the driveway, the library, the staircase, the dining room, and a wall. Mrs. Robbins paid for most of the improvements, and some were paid through the businesses. The Trust did not pay for the improvements. Mr. and Mrs. Robbins did not obtain permission from the Trust before they made the improvements, nor did they receive any consideration from the Trust for the improvements.
 {¶ 6} Mr. and Mrs. Robbins know that someone, either one of their businesses or Mrs. Robbins, pays the family's monthly rent for the Prosperity Road home to the Trust. However, Mr. and Mrs. Robbins admit that they have no formal lease arrangement with the Trust. The "rent" payment is approximately the same as the monthly payment on the $240,000 mortgage Mr. and Mrs. Robbins incurred just before they transferred the home. Mr. Robbins is not sure who pays the mortgage.
 {¶ 7} Mr. and Mrs. Robbins are the sole shareholders (other than the Trust, for whom Mr. Robbins acts as a proxy), owners, officers and directors of each of their businesses.
 {¶ 8} According to Mr. and Mrs. Robbins, Natalie K. Robbins, Inc. had no value and owned no assets at the time Mrs. Robbins transferred her stock to the Trust and Mr. Robbins. However, Natalie K. Robbins, Inc. quickly began acquiring assets, despite having no funds with which to purchase assets. In addition to the $90,000 in shareholder contributions that may have come from the mortgage, Sandra Robbins, Mr. Robbins' mother, gave Natalie K. Robbins, Inc. a sawmill shortly after the transfer. By the following year, Natalie K. Robbins, Inc. possessed $589,807 in assets.
 {¶ 9} AVC sought to collect their judgment against Mrs. Robbins in Ohio. Upon learning of her transfers to the Trust and Mr. Robbins, AVC filed the underlying complaint pursuant to the Ohio Uniform Fraudulent Transfer Act ("UFTA.") AVC named as defendants Mrs. Robbins; Natalie K. Robbins, dba Ohio Valley Logging; Mr. Robbins; the Trust; and Natalie K. Robbins, Inc.[2] In its complaint, AVC alleged that the Defendants transferred their interests in the Prosperity Road home and in Natalie K. Robbins, Inc. in contemplation of insolvency and with a design to hinder, delay, or defraud creditors. AVC sought to set aside the fraudulent transfers and subject the property described in those transfers to a lien.
 {¶ 10} After a trial to the bench, the trial court found that the Defendants transferred the Prosperity Road home and the shares of Natalie K. Robbins, Inc. with actual intent to defraud, hinder, or delay AVC from collecting on its judgment. The trial court further found that Natalie K. Robbins, Inc. is the corporate alter ego of Mr. and Mrs. Robbins, and that its corporate form may be disregarded and the corporate veil pierced.
 {¶ 11} The Defendants appeal, asserting the following six assignments of error: "I. The trial court erred in finding that the evidence presented by plaintiff satisfied its burden of proof. II. The court erred by finding that the corporate entity of Natalie [K.] Robbins, Inc. could be disregarded without such relief being requested and it lacked sufficient evidence. III. The court erred by finding that the real estate was an asset as defined by R.C. Section 1336.01(B). IV. The court erred in determining that the stock of Natalie [K.] Robbins, Inc. was an asset as defined by R.C. 1336.01(B). V. The trial court erred by finding that the Robbins did not receive reasonable equivalent value for the assets transferred to the trust. VI. The trial court erred by finding that the transfer of assets to the trust made the Robbins insolvent."
 II. {¶ 12} When a trial court's determination rests on findings of fact, this court will not overturn those findings unless they are against the manifest weight of the evidence. Pizza v. Strope (1990),54 Ohio St.3d 41, paragraph two of the syllabus; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280. We will not reverse the decision of a trial court as being against the manifest weight of the evidence if the decision of the trial court is supported by competent, credible evidence. Id.; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing," retains its focus upon the existence of "some competent, credible evidence." Fordv. Star Bank, N.A. (Aug. 27, 1998), Lawrence App. No. 97CA39, quotingState v. Schiebel (1990), 55 Ohio St.3d 71, 74. Thus, in conducting our review, we must make every reasonable presumption in favor of the trier of fact's findings of fact. Myers v. Garson (1993), 66 Ohio St.3d 610,614.
 {¶ 13} Pursuant to R.C. 1336.04(A)(1), "[a] transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation * * * [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Thus, to set aside a transfer as fraudulent pursuant to R.C. 1336.04(A)(1), a creditor must show: (1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors. John Deer Indus. Equip. Co. v.Gentile (1983), 9 Ohio App.3d 251, 254; BancOhio Natl. Bank v. NursingCenter Svcs., Inc. (1988), 61 Ohio App.3d 711, 715.
 {¶ 14} Because proving a debtor's actual intent to defraud is difficult, the party alleging fraud may demonstrate actual fraud by producing clear and convincing evidence of the "badges of fraud" found in R.C. 1336.04(B)(1)-(11). R.C. 1336.04(B) provides:
 {¶ 15} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 16} "(1) Whether the transfer or obligation was to an insider;
 {¶ 17} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 18} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 19} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 20} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 21} "(6) Whether the debtor absconded;
 {¶ 22} "(7) Whether the debtor removed or concealed assets;
 {¶ 23} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 24} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 25} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 26} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
 {¶ 27} The "badges of fraud" list contained in R.C. 1336.04(B) constitutes a non-exclusive catalog of factors appropriate for the court to use in determining whether a debtor's actual intent was to defraud a creditor. Uniform Fraudulent Transfer Act (U.L.A.) Sec. 4, comment (5);Ford, supra. However, while proof of one or more of the "badges of fraud" tends to show an existence of actual intent to defraud, it does not constitute proof of fraud per se. Ford, citing Premier Financial Servicesv. Citibank (Ariz.App. 1991) 185 Ariz. 80, 912 P.2d 1309. Once a creditor demonstrates a sufficient number of these "badges of fraud" with regard to a transfer, the burden of proof shifts to the debtor to prove that the transfer was not fraudulent. Ford, citing Baker Sons Equipment Co.v. GSO Equipment Leasing, Inc. (1993), 87 Ohio App.3d 644, 650; In reHarper (Bankr.Ct.S.D.Ohio, 1991), 132 B.R. 349, 353. To rebut this presumption of fraud, the debtor can demonstrate that he or she made the transfer in good faith for a reasonably equivalent value. R.C. 1336.08(A);Baker, 651.
 {¶ 28} In their first assignment of error, the Defendants assert generally that AVC did not satisfy its burden of proving the existence of any badges of fraud by clear and convincing evidence. In their third and fourth assignments of error, they assert that AVC did not prove by clear and convincing evidence that the Prosperity Road home and the stock in Natalie K. Robbins, Inc. constitute assets, an element of the seventh and eleventh badges of fraud. In their fifth assignment of error, the Defendants assert that AVC did not prove by clear and convincing evidence that they did not receive reasonably equivalent value for the assets they transferred to the Trust, and thus did not prove the eighth badge of fraud. In their sixth assignment of error, the Defendants assert that AVC did not prove by clear and convincing evidence that the transfers of assets made the Robbins insolvent, and thus did not prove the ninth badge of fraud. We consider each of the Defendants' specific arguments before addressing their general challenge to the trial court's finding of fraud.
 A. {¶ 29} The Defendants contend that the trial court erred in finding that the Prosperity Road home constitutes an asset, an element of the seventh and eleventh badges of fraud and a prerequisite to the application of the UFTA. Pursuant to R.C. 1336.01(B)(1), property, to the extent that is encumbered by a valid lien, does not constitute an asset.[3] In order to be considered an asset, property must have a value exceeding the amount of existing liens on it at the time of transfer.Baker Sons Equip. Co. v. GSO Equip. Leasing Inc. (1993),87 Ohio App.3d 644, 652; Jorgensen Co. v. First Charter Group, Inc.
(Dec.5, 1994), Stark App. No. 1994CA00070.
 {¶ 30} The Defendants presented evidence at trial that the Prosperity Road home was subject to a $240,000 mortgage at the time of transfer. The mortgage and the transfer occurred on the same day.
 {¶ 31} The trial testimony indicates that the home was valued at approximately $292,500 at the time of the transfer. Thus, the home was worth approximately $52,500 more than the lien at the time of transfer. Additionally, AVC presented evidence that even though Mr. and Mrs. Robbins transferred the Prosperity Road home to the Trust, they retained the obligation of the mortgage. AVC presented evidence that Mr. and Mrs. Robbins, through one of their businesses, indirectly make the monthly mortgage payments by paying "rent." Mr. Robbins purports not to know which business pays his rent and not to know who pays his mortgage. Mr. and Mrs. Robbins have continued to make improvements to the home without contribution of the Trust or permission from the Trust. Mr. and Mrs. Robbins lived in the home with their children at the time of the transfer and continue to do so. Under the Trust agreement, Mr. and Mrs. Robbins may live in the home indefinitely; the Trust cannot sell the home.
 {¶ 32} We find that these facts constitute some competent, credible evidence that the Prosperity Road home constitutes an asset. Accordingly, we overrule the Defendants' third assignment of error.
 B. {¶ 33} The Defendants also contend that the trial court erred in finding that the Natalie K. Robbins, Inc. stock constituted an asset at the time Mrs. Robbins transferred her stock to the trust and Mr. Robbins. The Defendants do not contend that the stock falls into one of the exceptions created for assets. Rather, they simply assert that the stock had no value at the time of transfer.
 {¶ 34} Tim Bryan, the accountant for Natalie K. Robbins, Inc., testified that Natalie K. Robbins, Inc. owned no assets as of the date of transfer. Mr. Bryan testified that because the corporation had no assets as of the time of transfer, he was unable to assign a value to its stock. However, Mr. Bryan agreed that it is advantageous to own a legal entity that is capable of acquiring assets, and thus that Natalie K. Robbins, Inc. possessed some inherent, though not quantifiable, value. Additionally, AVC presented evidence that Mr. and Mrs. Robbins used the corporation as a vehicle for acquiring assets that would have been subject to collection if Mr. and Mrs. Robbins had acquired them. In particular, AVC presented evidence that the year following its transfer, Natalie K. Robbins, Inc. received substantial cash contributions from "stockholders." Natalie K. Robbins, Inc.'s tax return for 1999 reflects that it possessed approximately $590,000 in assets.
 {¶ 35} Based on the facts listed above, we find that the record contains some competent, credible evidence upon which the trial court could conclude that the stock in Natalie K. Robbins, Inc. had some value, and thus constituted an asset, at the time of its transfer from Mrs. Robbins to Mr. Robbins and the Trust. Accordingly, we overrule the Defendants' fourth assignment of error.
 C. {¶ 36} In their fifth assignment of error, the Defendants contend that AVC did not present some competent, credible evidence that Mr. and Mrs. Robbins did not receive consideration of a reasonably equivalent value to the assets transferred. The eighth badge of fraud is present when the debtor does not receive reasonably equivalent value in a transfer. R.C. 1336.04(B)(8). Additionally, once a creditor has met his burden of proving badges of fraud, the debtor may rebut the presumption of fraud by presenting evidence that it received reasonably equivalent value for the assets transferred.
 {¶ 37} The Defendants' argument in this assignment of error again focuses on their contention that the Prosperity Road home and the Natalie K. Robbins, Inc. stock had no value when Mrs. Robbins transferred them. As we determined in our consideration of the Defendants' third and fourth assignments of error, the record contains some competent, credible evidence that the Prosperity Road home and the stock had value. Additionally, Mr. and Mrs. Robbins testified that they did not receive any consideration for the transfers. Mr. and Mrs. Robbins gave the Prosperity Road home to the Trust without receiving any consideration. The Trust did not even assume the mortgage obligation when it received the home. Likewise, Mrs. Robbins gave her stock to the Trust and to Mr. Robbins without receiving any form of payment in return.
 {¶ 38} Thus, we find that the record contains some competent, credible evidence that Mr. and Mrs. Robbins made the transfers without receiving consideration of a reasonably equivalent value to the assets transferred. Accordingly, we overrule the Defendants' fifth assignment of error.
 D. {¶ 39} In their sixth assignment of error, the Defendants assert that the trial court erred in finding that the transfers made Mr. and Mrs. Robbins insolvent. A debtor's insolvency due to a transfer constitutes the ninth badge of fraud described in R.C. 1336.01(B). Pursuant to R.C. 1336.02(A)(2), a debtor is presumed to be insolvent if he is not paying his debts as they become due.
 {¶ 40} Mr. and Mrs. Robbins testified in this case that they are aware of the AVC judgment against them and that they have not paid any portion of that debt. Mr. Robbins does not claim to own any assets of his own. Mrs. Robbins testified that she owns a car that had over 100,000 miles on it in May of 1998, which she described as having "very little value." Additionally, Mrs. Robbins testified that she had an IRA in 1998, and that the IRA carries a substantial penalty for early withdrawal.
 {¶ 41} Based upon the facts outlined above, we find that the record contains some competent, credible evidence supporting a finding that Mr. and Mrs. Robbins are presumed insolvent and did not adequately rebut the presumption of insolvency. Accordingly, we overrule the Defendants' sixth assignment of error.
 E. {¶ 42} In their first assignment of error, the Defendants' assert generally that AVC did not meet its burden of proof in showing by clear and convincing evidence that enough badges of fraud exist to warrant a finding that Mr. and Mrs. Robbins made the transfers with actual intent to defraud AVC.
 {¶ 43} As we noted in considering the Defendants' third through sixth assignments of error, Mr. and Mrs. Robbins transferred assets without receiving reasonably equivalent value as consideration, and Mr. and Mrs. Robbins are insolvent. Thus, AVC proved the eighth and ninth badges of fraud by clear and convincing evidence.
 {¶ 44} In addition, AVC presented clear and convincing evidence of several other badges of fraud. First, AVC presented evidence that Mr. and Mrs. Robbins made their transfers to the Trust and to Mr. Robbins. The Trust is set up for the benefit of Mr. and Mrs. Robbins' children, but Mr. and Mrs. Robbins receive benefit. Mrs. Robbins' father is the trustee for the Trust, yet Mr. and Mrs. Robbins have not relinquished control over the property donated to the Trust. In fact, Mr. and Mrs. Robbins still live in the home and make changes and improvements to it, and the Trust cannot sell the home. Thus, AVC presented clear and convincing evidence of the first and second badges of fraud, as all the transfers in question were to "insiders," and the debtors retained control of the property transferred. See R.C. 1336.01(G).
 {¶ 45} AVC also presented evidence that Mr. and Mrs. Robbins were aware of AVC's claims against them, valued at a total of over $500,000, before they made the transfers, and they proceeded to make the transfers just two weeks prior to the judgment against Mrs. Robbins was entered. Thus, AVC proved the fourth and tenth badges of fraud by clear and convincing evidence.
 {¶ 46} We find that the record contains some competent, credible evidence that several badges of fraud surround Mr. and Mrs. Robbins' transfers of assets. Additionally, we find that AVC produced proof of a sufficient number of badges of fraud to establish actual fraudulent intent. Therefore, we find that the burden of proof shifted to the Defendants to prove that the transfers were not fraudulent, and that the Defendants did not produce evidence that the transfers were not fraudulent.
 {¶ 47} Accordingly, we overrule the Defendants' first assignment of error.
 III. {¶ 48} In their second assignment of error, the Defendants assert that the trial court erred by finding that the corporate entity of Natalie K. Robbins, Inc. could be disregarded. The Defendants challenge the trial court's determination both on the ground that AVC failed to request such a remedy and on the ground that the record does not contain some competent, credible evidence supporting the trial court's decision to pierce the corporate veil.
 {¶ 49} Civ.R. 8(A) requires that a complaint contain "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for relief to which the party claims to be entitled." Civ.R. 8(A) does not require a party "to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationship of the parties." IllinoisControls, Inc. v. Langham (1994), 70 Ohio St.3d 512, paragraph six of the syllabus. The Civ.R. 9(B) requirement for allegations of fraud to be pled with particularity must be taken in conjunction with the general directives in Civ.R. 8 that the complaint be simple, concise and direct.F J Roofing Co. v. McGinley (1987), 35 Ohio App.3d 16, 17. Generally, a complaint is sufficient, even with regard to fraud, so long as it gives the defendant sufficient notice to defend against the claim.Haddon View Inv. Co. v. Coopers Lybrand (1982) 70 Ohio St.2d 154,159; see, also, Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480 at ¶ 29.
 {¶ 50} A corporation is a legal entity unto itself, separate and apart from the natural persons composing it. Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation if: "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere at paragraph three of the syllabus.
 {¶ 51} In this case, AVC named Natalie K. Robbins, Inc. in its complaint and alleged generally that the Defendants made fraudulent transfers with the intent to hinder, delay, or defraud their creditors. In particular, AVC alleged that Natalie K. Robbins, Inc. acquired real estate from Sandra Robbins. Additionally, AVC alleged that "the Defendants," including Natalie K. Robbins, Inc., transferred all the assets of Natalie K. Robbins, Inc. to the Trust. Thus, the complaint contained allegations regarding not only the stock of Natalie K. Robbins, Inc., over which it possessed no control because Mrs. Robbins was the sole owner, but also the assets of Natalie K. Robbins, Inc., over which Natalie K. Robbins, Inc. possessed exclusive control. We find that these allegations gave Natalie K. Robbins, Inc. sufficient notice of the claims against it and the possibility that the corporate veil would be pierced.
 {¶ 52} AVC produced evidence that Mr. and Mrs. Robbins, as individuals or through the Trust, are the sole shareholders, directors and officers of Natalie K. Robbins, Inc. Thus, the record contains some competent, credible evidence that Mr. and Mrs. Robbins possess control over Natalie K. Robbins, Inc. that is so complete that the corporation has no separate mind, will, or existence of its own. Additionally, AVC presented evidence that Natalie K. Robbins, Inc. accepted real estate from Sandra Robbins and that Natalie K. Robbins, Inc. accepted nearly $90,000 in shareholder contributions from Mrs. Robbins, Mr. Robbins, or the Trust. Thus, AVC presented some competent, credible evidence that Natalie K. Robbins, Inc. participated in committing fraud with regard to AVC. Finally, AVC presented evidence that it has not succeeded in collecting on its judgment due from Mr. and Mrs. Robbins, that Mr. and Mrs. Robbins are able to claim that they have no assets in part because they have transferred substantial assets, directly or indirectly, to Natalie K. Robbins, Inc., and hence that AVC has been harmed by Natalie K. Robbins, Inc.'s participation in such fraudulent transfers.
 {¶ 53} We find that the above facts constitute some competent, credible evidence supporting the trial court's decision to pierce the corporate veil of Natalie K. Robbins, Inc. Accordingly, we overrule the Defendants' second assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Abele, P.J., and Harsha, J., concur in judgment and opinion.
[1] In their brief, the Defendants appear to use the terms "Natalie Robbins, Inc." and "Natalie K. Robbins, Inc." interchangeably to refer to the same entity. Because the trial court used "Natalie K. Robbins, Inc." to refer to the company whose shares were fraudulently transferred, we will employ that term in our analysis.
[2] AVC added N.K.R., Inc. as a party in its amended complaint. However, shortly before the trial, AVC dismissed N.K.R., Inc. from its lawsuit without prejudice.
[3] R.C. 1336.01(B)(2) provides that "[p]roperty, to the extent that it is generally exempt under nonbankruptcy law, including, but not limited to, section 2329.66 of the Revised Code" does not constitute an asset. However, the Defendant's did not raise this argument in the trial court. Accordingly, we decline to consider it. See Lippy v. Society Natl. Bank
(1993), 88 Ohio App.3d 33.